UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| CARL WEBER | : | **CASE NO.:  08 CV 0983 (JGK)** |
| | : | |
| Plaintiff | : | **COMPLAINT & DEMAND FOR** |
| | : | **JURY TRIAL** |
| vs. | : | |
| | : | |
| JIHAD UHURU | : | **ECF CASE** |
| | : | |
| Defendant | : | |
| | : | |

Carl Weber ("Plaintiff"), by and through his undersigned attorney, Paul A. Chin, Esq., alleges upon knowledge to himself and upon information and belief as to all other matters as follows:

## NATURE OF THE CASE

1.      This is a civil action for, *inter alia,* defamation and intentional infliction of emotional distress arising out of knowingly false and defamatory statements of and concerning Plaintiff's reputation and character repeatedly published and/or broadcasted by Jihad Uhuru (hereinafter "Defendant") to vast numbers of third parties in the State of New York and throughout the United States, which has caused injury to Plaintiff's reputation and character and has detrimentally affected him personally and professionally.

2.      Defendant has also repeatedly threatened Plaintiff with severe bodily harm causing Plaintiff to reasonably believe that such severe bodily harm was imminent. Defendant's numerous statements to Plaintiff threatening severe bodily harm have caused Plaintiff to reasonably fear for his safety and have caused Plaintiff severe emotional distress, mental anguish, fear and worry.

3.    This action also seeks preliminary and permanent injunctive relief restraining and enjoining Defendant from continuing to: (i) publish and/or communicate false and defamatory statements of and concerning Plaintiff to numerous third parties; (ii) harass and threaten Plaintiff with severe bodily harm; and (iii) tortiously interfere with Plaintiff's business relationships.

4.    Defendant has, on numerous occasions, made statements to numerous third parties of and concerning Plaintiff containing vile, cruel, offensive, threatening and morally reprehensible statements regarding Plaintiff's reputation and character that are so outrageous in character and extreme in degree as to go beyond all possible bounds of decency and are utterly intolerable in a civilized society.

5.    By this action, Plaintiff seeks a finding that: (i) Defendant knowingly, willfully, intentionally and repeatedly published and/or broadcasted, in the State of new York and throughout the United States, false and defamatory statements of and concerning Plaintiff's personal and professional reputation and character to vast numbers of third parties; (ii) Defendant knowingly, willfully and intentionally threatened Plaintiff with immediate bodily harm; (iii) Defendant knew that his statements of and concerning Plaintiff's character and reputation were false and completely untrue and/or made these statements in reckless disregard of the truth; (iv) Defendant willfully and intentionally inflicted severe emotional distress on Plaintiff by threatening Plaintiff with immediate physical harm and by repeatedly publishing vile, cruel, offensive, lewd and morally reprehensible statements about Plaintiff's character and reputation to numerous third parties located in the State of New York and throughout the United States; and (v) Plaintiff has suffered, and continues to suffer, severe economic and non-economic

damages, including but not limited to severe mental anguish, emotional distress, anxiety and constant worry as a result of Defendant's willful, purposeful and intentional misconduct.

6.    Plaintiff is entitled to all legal, equitable and financial relief, including, but not limited to preliminary and permanent injunctive relief, as requested herein, to remedy Defendant's willful, purposeful and intentional misconduct.

## JURISDICTION AND VENUE

7.    Plaintiff is a citizen of the state of New York for purposes of diversity jurisdiction under 28 U.S.C. §1332.

8.    Upon information and belief, Defendant is a citizen of the state of Georgia for purposes of diversity jurisdiction under 28 U.S.C. §1332.

9.    This Court has original subject matter jurisdiction with respect to this action pursuant to 28 U.S.C. §1332 (a)(1) as there exists complete diversity of citizenship between Plaintiff and Defendant and the amount in controversy exceeds Seventy Five Thousand Dollars ($75,000.00), exclusive of interest and costs.

10.    This Court has personal jurisdiction over Defendant because Defendant has willfully, intentionally and purposefully committed wrongful acts in the State of New York and has caused harm to Plaintiff in the State of New York, where Plaintiff resides.

11.    Venue is properly laid in this District pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## PARTIES

12.    Plaintiff is a well known author and has written several best selling novels. Plaintiff is signed to an exclusive writer's contract with a major New York publishing

company and, as a part of this contract, Plaintiff must conduct book tours in which he travels across the country to meet with fans, appear on various radio stations and conducts interviews with various newspapers and magazines.

13.     Plaintiff is also the majority owner, and managing member, of the book publishing/distribution company known as Urban Books, LLC. (hereinafter "Urban"). Urban is a New York limited liability company which has entered into several exclusive writer contracts with numerous well known authors (hereinafter "Urban's Authors") and is the exclusive publisher/distributor of books written by Urban's Authors.   Urban currently has an exclusive publishing/distribution agreement with a major New York publishing/distribution company (hereinafter "Distributor"), through which Urban publishes and distributes books written by Urban's Authors throughout the United States.

14.      Upon information and belief, Defendant lives and works in Conyers, Georgia.  Upon information and belief, Defendant is a convicted felon and has served time in a federal penitentiary.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

**Plaintiff's business relationship with Defendant**

15.     On or about December 1, 2003, Plaintiff, on behalf of Urban, entered into an exclusive writer's agreement with Defendant (the "December 2003 Contract"). Pursuant to the December 2003 Contract Defendant was required to write two (2) books/novels which would be exclusively published and commercially distributed in the United States by Urban.

16.     On or about June 1, 2004, Plaintiff, on behalf of Urban, entered into a second exclusive writer's agreement with Defendant (the "June 2004 Contract").

Pursuant to the June 2004 Contract Defendant was required to write a third book/novel which would be exclusively published and commercially distributed in the United States by Urban.

17.     At the time Plaintiff entered into the December 2003 and June 2004 Contracts with Defendant, Defendant was a relatively unknown author.

18.     Pursuant to the December 2003 and June 2004 Contracts, Urban published and commercially distributed three (3) novels/books written by Defendant (hereinafter "Defendant's Books").    Despite national distribution, Defendant's Books achieved limited commercial/ financial success.

**Origin of Defendant's animosity towards Plaintiff**

19.     Upon information and belief, Defendant blamed Plaintiff for the lackluster sales performance of Defendant's Books and, on or about November, 2006, Defendant confronted Plaintiff via telephone regarding sales of his third novel with Urban.

20.     During this confrontation, Defendant claimed that Plaintiff, and/or Urban, purposefully engaged in conduct calculated to sabotage and/or undermine the commercial success of Defendant's Books. Plaintiff vehemently denied Defendant's accusations specifically pointing out to Defendant that, as the exclusive publisher/distributor of Defendant's Books, Urban's financial success as a book publisher and distributor is completely dependent on the commercial success of the books/novels written by Urban's Authors.

21.     Despite the absurdity of his allegations, Defendant remained, and remains, convinced that Plaintiff and/or Urban were solely responsible for the poor sales of Defendant's Books; as a result, Defendant engaged in a systematic and continuous

campaign to: (i) defame Plaintiff's character and reputation to, among other third-parties, Plaintiff's fans; (ii) threaten Plaintiff with immediate and severe bodily harm; and (iii) disrupt and/or tortiously interfere with Plaintiff's business relationships with Urban's Authors and Urban's Distributor (collectively referred to herein as the "Campaign" or "Defendant's Campaign").

**Defendant's verbal defamatory and threatening statements**

22.     On or about October 30, 2007, Defendant was interviewed by Torrian Ferguson (hereinafter "Mr. Ferguson") on the website www.artistfirst.com, which was repeatedly published and/or broadcasted, in the State of New York and throughout the United States, over the world wide web to hundreds, if not thousands, of on-line third-party listeners (the "Artistfirst Interview").

23.     During the Artistfirst Interview, Defendant willfully and intentionally: (i) made numerous statements of fact concerning Plaintiff's character and reputation which were knowing false and completely untrue; (ii) threatened Plaintiff with immediate and severe bodily harm; and (iii) made knowingly false statements of fact concerning Plaintiff tending to injure Plaintiff in his business and profession.

24.     During the Artistfirst Interview, Defendant falsely stated that Plaintiff engages in subversive conduct to personally attack African-American female book authors: *"These are some of the subversive things that Carl Weber does…It's the personal attacks that he's* [Plaintiff] *done, that he attacked so many queens in this industry* [African-American female book authors]*, within Urban, outside of Urban…so many queens in this industry that he's made personal attacks on . . . You* [Plaintiff] *tryin'*

6

*to make yourself look bigger, and by belittling a woman. . . . You put all kinds of subversive stuff out there about these sisters.*"

25.    During the Artistfirst Interview, Defendant also falsely stated that Plaintiff engages in conduct calculated to undermine the commercial success of Urban's female authors: "*A lot of these sisters from Urban* [Urban's female book authors]*, he's putting their books out there 'til forever, you know, 2009, 2010…I talk to sisters from Urban all the time . . . they say why is he doing this to me? . . . some of these sisters sound like they almost suicidal.*"

26.    When asked during the interview why Plaintiff would seek to undermine the commercial success of his own writers, Defendant responded that Plaintiff was trying to "ruin" these authors: "*It's the power and the control. It's the power of 'I* [Plaintiff] *can ruin you* [Urban's female authors]*. . . . I got the control of God. . . . your book is supposed to come out in 2008, but in THE CONTRACT, I can put it off until 2010. I can do this because I'm God.' You know, it's the God complex that he* [Plaintiff] *has.*"

27.    Defendant's knowingly false and defamatory statements of fact concerning Plaintiff, as detailed paragraphs 23 to 26 herein, were repeatedly published in the State of New York and throughout the United States, over the world-wide web, to numerous third-parties listening to the Artistfirst Interview on the Artistfirst website.

28.    As a direct and proximate result of the repeated publication of Defendant's knowingly false and defamatory statements of fact concerning Plaintiff, as detailed in paragraphs 23 to 26 herein, Plaintiff has suffered, and continues to suffer, severe economic and non-economic injury.

29.    During the Artistfirst Interview, Defendant also made the following statements threatening Plaintiff with immediate and severe bodily injury: "*He* [Plaintiff] *sent me an email last year saying that I was dead in the industry, and he picked the wrong person to say that to . . . I got bail money . . . I'm gonna see him again . . . I'm not gonna call you the bitch that you are . . . He* [Plaintiff] *thought this was over. It ain't over. This is real life, baby. This is real . . . I don't play. I'm promising you* [Plaintiff] *that it's on . . . I've done things to people for much less.*"

30.    Defendant also made the following statements threatening Plaintiff's life: "*Some little demented voice is whispering in his* [Plaintiff] *ear and saying that everybody is talking about him and everybody is conspiring against him. Well, I tell people, you can't justify a crazy person* [Plaintiff] *. . . What you need to a mad dog, you need to put him to sleep, you need to shoot him, you need to kill him . . . if you can't treat him, if you can't heal him, you need to put him to sleep.*"

31.    During the interview, Defendant confirmed his present ability to cause Plaintiff severe bodily injury: "*I'm gonna show him* [Plaintiff] *. . . I'm not gonna hide, I'm not gonna put my head between my legs . . . I can get on a plane . . . and if I'm gonna get you* [Plaintiff]*, they don't got enough bodyguards, they don't HAVE enough bodyguards . . . to stop me from touchin' you, and talkin' to you, and gettin' you to look me in the eye, and sayin' some of that bullshit you said when you done made up that fake email address . . .*"

32.    Defendant's statements threatening Plaintiff with immediate and severe bodily harm, as detailed in paragraphs 29 to 31 herein, were unjustifiable and were intentionally made by Defendant for the sole purpose of placing Plaintiff in fear of his

physical safety.  As a result, Plaintiff reasonably believed that Defendant had the ability to, and would, cause him severe physical injury.

33.    During the Artistfirst Interview, Defendant also made the following false and defamatory statements of fact tending to injure Plaintiff in his profession as a writer and his business as a publisher/distributor of Urban's Authors:  *"It's just a matter of time, and you can see the writing on the wall. If you look at Urban's bestselling authors of two, three years ago, they're not there no more. You know, I was one of 'em . . . LaJill Hunt was one of—she was one . . .He's* [Plaintiff] *killin' himself. The man* [Plaintiff] *is killin' himself. Urban is on the way out."*

34.    Defendant also made false and defamatory statements suggesting that Plaintiff takes advantage of authors who sign writer contracts with Urban and that Plaintiff engages in unethical business practices:  *"A lot of [Urban's] authors are scared to step up and make some noise . . . they're still into their deals . . . or they worried about if I say something about him, he's* [Plaintiff] *not gonna give me my royalties.' Well hell, he not givin' you your right royalties anyway, nine times outta ten…You get very skeptical when you do see [your books] all the time, and you know you're doing major numbers, and you get a two, three hundred dollar check. It does make you question why…"*

35.    Defendant's knowingly false and defamatory statements of fact concerning Plaintiff, as detailed paragraphs 33 to 34 herein, were published to numerous third-parties listening to the Artistfirst Interview which was repeatedly published and/or broadcasted in the State of New York and throughout the United States on the Artistfirst

website; and were intentionally made for the purpose of injuring Plaintiff in his profession as a writer and his business as a book publisher/distributor.

36.    On or about November 30, 2007, Defendant gave a public speech at an author book signing in Harlem, sponsored by The Urban Book Source which was repeatedly published and/or broadcasted in the State of New York and throughout the United States via the world wide web to hundreds, if not thousands of on-line third-party listeners (the "Urban Book Source Interview"). During the Urban Book Source Interview, Defendant willfully and intentionally: (i) made numerous statements of fact concerning Plaintiff's character and reputation which were knowing false and completely untrue; (ii) threatened Plaintiff with immediate and severe bodily harm; and (iii) made knowingly false statements of fact concerning Plaintiff tending to injure Plaintiff in his business and profession.

37.    During the Urban Book Source Interview, Defendant, again, made statements falsely claiming that Plaintiff intentionally sought to demoralize and/or undermine the commercial success of Urban's female authors: *"The bitch* [Plaintiff] *is fuckin' with all these damn sistahs* [Urban's female authors]...*He* [Plaintiff] *done put these sistahs' book, um, way back . . . like to 2009, 2010; they joints* [the female authors' books] *supposed to be out now and next year, you know what I'm sayin'?...I told the motherfucker* [Plaintiff], *I said, 'Nigga* [Plaintiff], *fuck with me. . . .He* [Plaintiff] *talked dirt about Zane* [a female author with Urban], *he talked dirt about Vickie* [a female author with Urban] *to try to bring hisself* [Plaintiff] *up...he's* [Plaintiff] *messin' with these queens out here and they ain't did nothin' to him, got 'em stressin', got 'em losin' weight, and they' ain't done nothin' . . ."*

10

38.     Defendant's knowingly false and defamatory statements of fact concerning Plaintiff, as detailed in paragraph 37 herein, were repeatedly published in the State of New York and throughout the United States to numerous third-parties listening to the Urban Book Source Interview via the Urban Book Source website.

39.     As a direct and proximate result of the publication of Defendant's knowingly false and defamatory statements of fact concerning Plaintiff, as detailed in paragraph 37 herein, Plaintiff has suffered, and continues to suffer, severe economic and non-economic injury.

40.     During the Urban Book Source Interview, Defendant also made the following statements threatening Plaintiff with immediate and severe bodily injury: *"I told the motherfucker* [Plaintiff]*, I said, 'Nigga* [Plaintiff]*, fuck with me. Fuck with a real motherfucker, you know what I'm sayin'? . . . I got bail money, you little fuckin' midget* [Plaintiff]*. . ."*

41.     Defendant also indicated during the interview that he made at least one prior attempt to catch Plaintiff off-guard and cause him harm: *"I went to BEA, layin' for his* [Plaintiff] *bitch ass, uh,, and the bitch motherfucker didn't show up . . . I ain't got no talk for him* [Plaintiff]*, I got no conversation for him, I ain't even gonna say hi to this motherfucker* [Plaintiff]*, know what I'm sayin'? I'm gonna bitch-slap the fuck outta his ass . . . I got bail money . . . the motherfucker* [Plaintiff] *didn't show up, okay? I was at Black Expo. His* [Plaintiff] *whole fuckin' entourage was up in Indianapolis . . . I went to do signings 'cause I heard this bitch motherfucker* [Plaintiff] *was gonna be there, you know. This motherfucker* [Plaintiff] *pulled another no-show, you know."*

42.     Defendant's statements threatening Plaintiff with immediate and severe bodily harm, as detailed in paragraphs 40 to 41 herein, were unjustifiable and were intentionally made by Defendant for the sole purpose of placing Plaintiff in fear of his physical safety.  As a result, Plaintiff reasonably believed that Defendant had the ability to, and would, cause Plaintiff physical injury.

43.     During the Urban Book Source Interview, Defendant also made the following false and defamatory statements of fact tending to injure Plaintiff in his profession as a writer and his business as a publisher/distributor of Urban's Authors: *"This motherfucker* [Plaintiff] *sellin' books three dollars, three dollars and fifty cent a book out to the street vendors . . . how the fuck can authors get paid . . . how the fuck Kensington get paid, the author get paid, and this punk-ass nigga* [Plaintiff] *get paid, you know what I'm sayin', and he* [Plaintiff] *sellin' shit three dollars and fifty cent a book. Hell no...I got a legitimate beef, as well as every Urban author . . . every Urban author that's been there for the last few years, that's got a few books out...He's* [Plaintiff] *fuckin' up this industry..."*

44.     Defendant's knowingly false and defamatory statements of fact concerning Plaintiff, as detailed in paragraph 43 herein, were repeatedly published in the State of New York and throughout the United States to numerous third-parties listening to the Urban Book Source Interview via the Urban Book Source website; and were intentionally made for the purpose of injuring Plaintiff in his profession as a writer and his business as a book publisher/distributor.

**Defendant's written defamatory and threatening statements**

45. Defendant has repeatedly written knowingly false statements of fact concerning Plaintiff's personal and professional character and reputation and repeatedly published, in the State of New York and throughout the United States, these written statements to vast numbers of third-parties via various websites and "blogs" available on the world-wide web, where instant access and global spread make Defendant's acts all the more serious and onerous.

46. On or about December 10, 2007, Defendant published, in the State of New York and throughout the United States, the following false and defamatory statement concerning Plaintiff on the website identified as "AOL Black Voices" and on an internet "blog" identified as "The Urban Book Source" to various third-parties: *"Wow? I see the laptop warrior* [Plaintiff]*, e-mail general* [Plaintiff]*, computer soldier* [Plaintiff] *is still hiding behind his* [Plaintiff] *multiple personality-screen names, just as he* [Plaintiff] *hides behind an attorney. For all who don't know, I am the author Jihad. And I don't need fake names to hide behind, nor an attorney. Yes the little midget* [Plaintiff]*, whom I refer to as Mighty Mouth* [Plaintiff] *is a COWARD. Oops, I can't say that cause It is suing me. LOL...It was real tough threatening and downing several queens in the literary industry, calling them names I won't repeat. But when I stood up to it, he* [Plaintiff] *put his tail between his legs and went crying to an attorney the authorities, and playing on message boards. What's wrong Super star-laptop warrior* [Plaintiff]*, you scared of me letting everyone know about your MENTALLY DERANGED* [Plaintiff] *ass. . . . I think the world knows who you are Little Man* [Plaintiff] *. . ."*

47.    On or about December 10, 2007, Defendant published, in the State of New York and throughout the United States, the following false and defamatory statement tending to injure Plaintiff in his profession as a writer and his business as a book publisher/distributor on the website identified as "AOL Black Voices" and on an internet "blog" identified as "The Urban Book Source" to various third-parties: *"Are you* [Plaintiff] *going to sue me for you telling me to fire my agent back in 03, because you didn't want to deal with agents. Are you going to sue me for signing me in Nov. of 2003 under URBAN BOOKS and releasing my first book Street Life one month later in December 2003...Mighty Mouth* [Plaintiff]*, are you going to sue me for telling everyone how you* [Plaintiff] *re-released my first book Street Life in October 2004 under Urban Books and changed the title. No, I got it, I guess your* [Plaintiff] *little half-pint ass is going to sue me for 3.75 and 4.00 Urban Book titles you've sold to stores, that I have invoices for (new Urban titles) all i want to know is how do you pay the authors if you selling books so cheap...Oh hell, I guess Mighty mouth* [Plaintiff] *is going to sue me some more. If this sounds like the rantings and ravings of a deranged person, then ask some Urban Authors who've been with Urban a while. . . . And by the way I am available for interview if anyone is interested and want to know the scoop on Mighty Mouth* [Plaintiff] *and his* [Plaintiff] *cowardly dealings..."*

48.    On or about December 2, 2007, Defendant sent the following e-mail to Plaintiff threatening Plaintiff with immediate and severe physical injury: *"I got that you know little man* [Plaintiff]*, you have to be the stupidest, think-they smart motha-fucka in the world...so tell Mr. Chin this, research Mrs. Adderly who was convicted of literary fraud earlier this year, I got so much dirt on your ass I could write a book...I promise*

*you that me and several others will go to the F.B.I. not an attorney but the F.B.I. with proof and timelines of all that you've done. You've left a paper trail dude and let this be a notice you have 1 week to get with me and do right by all the authors you've wronged...trust me little man* [Plaintiff] *you don't won't this, I promise you don't.... "*

49.    Upon information and belief, many individuals who have read and/or heard Defendant's false and defamatory statements concerning Plaintiff, as detailed in paragraphs 23-26, 33-34, 37, 43 and 46-47 herein, believe that Defendant's statements are true.

50.    Upon information and belief, Defendant's false and defamatory statements concerning Plaintiff, as detailed in paragraphs 23-26, 33-34, 37, 43 and 46-47 herein, have detrimentally affected, or will detrimentally effect Plaintiff's profession as a writer and negatively impact Plaintiff's book publishing/distributing business.

51.    Furthermore, Defendant's numerous, and continuous, verbal and written threats of violence against Plaintiff, as detailed in paragraphs 29-32, 40-41 and 48 herein, has placed Plaintiff in constant fear of physical harm from Defendant and has directly and proximately caused Plaintiff severe emotional distress and mental anguish.

52.    As of the filing date of this Complaint, Defendant continues to be engaged in the conduct detailed in paragraphs 19 to 48 herein, despite Plaintiff's written demand that he cease such conduct immediately.

**Injunctive relief is necessary and appropriate**

53.    Defendant's false and defamatory statements of and concerning Plaintiff's personal and professional character and reputation has caused, continues to cause and/or

15

will cause many of Plaintiff's fans, friends, business associates and others to openly state that they will not support or purchase any of Plaintiff's books in the future.

54.    By reason of Defendant's actions, Plaintiff has suffered and will continue to suffer extreme hardship and actual and impending irreparable injury to his reputation and character in the eyes of his fans, retailers, Urban's Distributor and the public at large for which there is no adequate remedy at law.

55.    Defendant's false and defamatory statements of and concerning Plaintiff's personal and professional character and reputation, as detailed in paragraphs 23-26, 33-34, 37, 43 and 46-47 herein, are offensive, threatening and morally reprehensible; are outrageous in character and extreme in degree; and goes beyond all possible bounds of decency and are utterly intolerable in a civilized society.

56.    Defendant's continued pattern of harassment and threats, as detailed in paragraphs 23-26, 33-34, 37, 43 and 46-48 herein, has caused, and continues to cause, Plaintiff to suffer severe, actual and impending irreparable injury to Plaintiff's mental and emotional stability for which there is no adequate remedy at law.

57.    Defendant's continued threats to cause immediate and severe physical injury to Plaintiff, as detailed in paragraphs 29-32, 40-41 and 48 herein, has caused, and continues to cause, Plaintiff to suffer severe and irreparable mental distress, emotional anguish, fear for his safety and anxiety for which there is no adequate remedy at law.

58.    Injunctive relief is the only remedy available to Plaintiff for Defendant's illegal and unlawful acts, and is the only way Plaintiff can prevent Defendant from continuing to: (i) destroy Plaintiff's personal and professional character and reputation;

(ii) threaten Plaintiff's physical safety; and (iii) to inflict severe and irreparable emotional distress, mental anguish and anxiety on Plaintiff.

## CAUSES OF ACTION

### COUNT I
### DEFAMATION-SLANDER

59.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 58 as if fully set forth herein.

60.    Defendant's verbal statements of and concerning Plaintiff, as detailed in paragraphs 23-26, 33-34, 37 and 43 herein, are false, untrue and defamatory and were repeatedly published and/or broadcasted in the State of New York, in this District, and throughout the United States to numerous third parties.

61.    At the time Defendant made the statements identified in this Count I and paragraphs 23-26, 33-34, 37 and 43 of this Complaint, Defendant knew his statements to be false and uttered these statements with actual knowledge of their falsity.

62.    Defendant's statements were malicious because at the time Defendant made these statements he knew and had actual knowledge that these statements were false and untrue.

63.    Defendant's defamatory statements of and concerning Plaintiff's personal and professional character and reputation, as detailed in paragraphs 23-26, 33-34, 37 and 43 of this Complaint would lead a reasonable listener or reader to believe that these statements were true.

64.    As a direct and proximate result of Defendant's defamatory statements of and concerning Plaintiff's personal and professional character and reputation, as detailed

in paragraphs 23-26, 33-34, 37 and 43 herein, Plaintiff has suffered, and continues to suffer, significant economic and non-economic injury,

65.    As a direct and proximate result of Defendant's defamatory statements of and concerning Plaintiff's personal and professional character and reputation, as detailed in paragraphs 23-26, 33-34, 37 and 43 herein, Plaintiff has suffered, and continues to suffer, extreme stress, emotional distress, mental anguish and anxiety.

66.    As a direct and proximate result of Defendant's defamatory statements of and concerning Plaintiff's personal and professional character and reputation, as detailed in paragraphs 23-26, 33-34, 37 and 43 herein, Plaintiff has suffered special damages in that he has suffered impairment to his ability to maintain his career as an author.

67.    Defendant's conduct, as described herein, constitutes willful misconduct and Defendant's entire want of care that raises a presumption of conscious indifference to the consequences of his acts.

68.    Plaintiff is entitled to an award of punitive damages from Defendant in order to punish and penalize Defendant from repeating the unlawful conduct described herein.

69.    As a direct and proximate result of Defendant's conduct, Plaintiff is entitled to an award of compensatory damages in an amount to be determined at trial, but in no event less than $500,000.00 (Five Hundred Thousand Dollars).

70.    As a direct and proximate result of Defendant's conduct, Plaintiff is entitled to an award of punitive damages in an amount to be determined at trial, but in no event less than $1,000,000.00 (One Million Dollars) to punish and penalize Defendant for

his wanton and malicious conduct and to deter Defendant from continuing to repeat the unlawful conduct described herein.

## COUNT II
## DEFAMATION-LIBEL

71.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 58 as if fully set forth herein.

72.    Defendant has made false and defamatory written statements, as detailed in paragraphs 46-47 herein, of and concerning Plaintiff's personal and professional character and reputation and has repeatedly published and/or broadcasted these statements in the State of New York, in this District, and throughout the United States to numerous third parties.

73.    Defendant knew that his written statements, as detailed in paragraphs 46-47 herein, about Plaintiff were false and Defendant had actual knowledge of their falsity at the time these statements were published by Defendant.

74.    Defendant repeatedly published the false and defamatory statements, as detailed in paragraphs 46-47 herein, without privilege, authorization or consent.

75.    Defendant's false and defamatory statements, as detailed in paragraphs 46-47 herein, of and concerning Plaintiff have caused, and continues to cause, injury to Plaintiff's personal and professional character and reputation.

76.    Defendant made the false and defamatory statements, detailed in paragraphs 46-47 herein, for the sole purpose ruining Plaintiff's personal and professional reputation and character, to cause injury to Plaintiff in his profession as a writer and author and in his business as a book publisher/distributor.

77.    Defendant acted with actual malice in making the false and defamatory statements detailed in paragraphs 46-47 herein because, at all relevant times herein, Defendant knew that these statements were false and completely untrue.

78.    Defendant's false and defamatory statements, as detailed in paragraphs 46-47 herein, have caused significant and irreparable harm to Plaintiff's reputation and character, especially among Plaintiff's fans.

79.    As a direct and proximate result of Defendant's statements, as detailed in paragraphs 46-47 herein, Plaintiff's personal and professional reputation has suffered significant damage.

80.    As a direct and proximate result of Defendant's statements, as detailed in paragraphs 46-47 herein, Plaintiff has suffered, and continues to suffer, considerable stress, emotional distress, mental anguish and intense anxiety.

81.    As a direct and proximate result of Defendant's statements, as detailed in paragraphs 46-47 herein, Plaintiff has suffered special damages in that he has suffered impairment to his ability to maintain his career as an author or, at the very least, has lost many fans of his books.

82.    The conduct of Defendant demonstrates willful misconduct and a want of care that raises a presumption of conscious indifference to the consequences of Defendant's actions.

83.    Plaintiff is entitled to an award of punitive damages from Defendant in order to punish and penalize Defendant for his wanton and malicious conduct and to deter Defendant from continuing to repeat his unlawful conduct.

84.    As a direct and proximate result of Defendant's conduct, Plaintiff is entitled to an award of compensatory damages in an amount to be determined at trial, but in no event less than $500,000.00 (Five Hundred Thousand Dollars).

85.    As a direct and proximate result of Defendant's conduct, Plaintiff is entitled to an award of punitive damages in an amount to be determined at trial, but in no event less than $1,000,000.00 (One Million Dollars) to punish and penalize Defendant and to deter Defendant from repeating his unlawful conduct.

## COUNT III
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

86.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 85 as if fully set forth herein.

87.    Since October 2007, Defendant has engaged in a vindictive campaign to not only ruin Plaintiff's personal and professional reputation and character, but to harass Plaintiff and threaten his life in order to cause Plaintiff severe emotional distress and mental anguish.

88.    Since October 2007, Defendant, as detailed in paragraphs 23-47 herein, has made the most vile, offensive, defamatory, lewd and morally reprehensible statements about Plaintiff that are so outrageous in character and extreme in degree as to go beyond all possible bounds of decency and are utterly intolerable in a civilized society.

89.    In addition, Defendant, as detailed in paragraphs 29-31, 40-42 and 48 herein, has repeatedly communicated, to Plaintiff and others, his intention to cause Plaintiff severe bodily injury and has even threatened to kill Plaintiff.

90.    Defendant's conduct and statements, as detailed in paragraphs 23-48 herein, so transcend the boundaries of decency as to be regarded as atrocious and intolerable in a civilized society.

91.    By his conduct and statements, Defendant is intentionally, and with malice, inflicting emotional as well as mental distress on Plaintiff.

92.    As a direct and proximate result of Defendant's extreme and outrageous statements and conduct, Plaintiff has suffered and continues to suffer severe emotional distress, mental anguish, anxiety, daily stress, sleep disruptions, constant fear and worry.

93.    As a direct and proximate result of Defendant's extreme and outrageous statements and conduct Plaintiff is experiencing intense physical and emotional pain and the perilous effects of worry that is damaging to normal activities, concentration, self-care, carrying out of business, and general enjoyment of life and life functions.

94.    As a direct and proximate result of Defendant's conduct, Plaintiff is entitled to an award of compensatory damages in an amount to be determined at trial, but in no event less than $200,000.00 (Two Hundred Thousand Dollars).

## COUNT IV
## PRELIMINARY INJUNCTIVE RELIEF

95.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 94 as if fully set forth herein.

96.    Defendant's false and defamatory statements of and concerning Plaintiff, as detailed in paragraphs 23-26, 33-34, 37-43 and 46-47 herein, has been, and continue to be, repeatedly published and communicated in the State of New York, in this District and throughout the United States to many of Plaintiff's fans, associates, authors and business partners.

97.    Defendant's false and defamatory statements, as detailed in paragraphs 23-26, 33-34, 37-43 and 46-47 herein, attack Plaintiff's personal and professional reputation and character and have had, and continues to have, serious and detrimental consequences to his profession as a writer and as a publisher/distributor of Urban's books/novels.

98.    Plaintiff has been, and continues to be, bombarded with numerous e-mails and interviews from and by Defendant, as detailed in paragraphs 23-26, 33-34, 37-43 and 46-48 herein, all of which contain vile, crude, hurtful, offensive, morally reprehensible and defamatory statements and threats to Plaintiff's physical safety.

99.    If Defendant is not immediately enjoined from continuing to publish his false and defamatory statements of and concerning Plaintiff, Plaintiff will suffer severe and irreparable injury to his reputation, credibility and character as a writer and as a publisher/distributor of Urban's books/novels, for which there is no alternative or adequate remedy at law.

100.    If Defendant is not immediately enjoined from continuing to harass and threaten Plaintiff with physical bodily harm, Plaintiff will have to live in constant fear of Defendant and will have to continue to suffer severe and irreparable mental anguish, emotional distress, anxiety and worry until a final resolution of this case.

101.    It is more than likely that Plaintiff will succeed on the merits of his claim for defamation and intentional infliction of emotional harm against Defendant because the statements supporting these claims cannot be disputed by Defendant and cannot be considered protectible speech.

102.    Therefore, this Court should immediately enter a preliminary injunction enjoining Defendant from: (i) continuing to threaten Plaintiff's physical safety; and (ii)

publishing and/or broadcasting any further false and defamatory statements of and concerning Plaintiff's reputation, credibility and character as a writer and/or as a publisher/distributor of Urban's books/novels.

**COUNT V**
**PERMANENT INJUNCTIVE RELIEF**

103.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 102 as if fully set forth herein.

104.    As demonstrated herein, Defendant's false and defamatory statements of and concerning Plaintiff, as detailed in paragraphs 23-26, 33-34, 37-43 and 46-47 herein, has been, and continue to be, published and communicated in the State of New York, in this District and throughout the United States to many of Plaintiff's fans, associates, authors, business partners and numerous other third-parties.

105.    Defendant's false and defamatory statements, as detailed in paragraphs 23-26, 33-34, 37-43 and 46-47 herein, attack Plaintiff's personal and professional reputation and character and have had, and continues to have, serious and detrimental consequences to his profession as a writer and as a publisher/distributor of Urban's books/novels.

106.    Plaintiff has been, and continues to be, bombarded with numerous e-mails and interviews from and by Defendant, as detailed in paragraphs 23-26, 33-34, 37-43 and 46-48 herein, all of which contain vile, crude, hurtful, offensive, morally reprehensible and defamatory statements and threats to Plaintiff's physical safety.

107.    If Defendant is not permanently enjoined from continuing to publish his false and defamatory statements of and concerning Plaintiff, Plaintiff will suffer severe and irreparable injury to his reputation, credibility and character as a writer and as a

publisher/distributor of Urban's books/novels, for which there is no alternative or adequate remedy at law.

108.    If Defendant is not permanently enjoined from continuing to harass and threaten Plaintiff with physical bodily harm, Plaintiff will have to live in constant fear of Defendant and will have to continue to suffer severe and irreparable mental anguish, emotional distress, anxiety and worry, for which there is no alternative or adequate remedy at law.

109.    Therefore, this Court should enter a permanent injunction enjoining Defendant from: (i) threatening Plaintiff's physical safety; and (ii) publishing and/or broadcasting any false and/or defamatory statements of and concerning Plaintiff's reputation, credibility and character as a writer and/or as a publisher/distributor of Urban's books/novels.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that this Court:

A.    Issue a preliminary injunction ordering Defendant, his agents, employees, or other individuals or entity(ies) working in conjunction with him or on his behalf, to refrain immediately and pending the final hearing and determination of this action from: (i) threatening Plaintiff's physical safety and/or threatening to cause Plaintiff physical harm; and (ii) publishing and/or broadcasting any false and/or defamatory statements of and concerning Plaintiff's reputation, credibility and character as a writer and/or as a publisher/distributor of Urban's books/novels;

B.    Issue a permanent injunction perpetually enjoining and restraining Defendant, his agents, employees, or other individuals or entity(ies) working in

conjunction with him or on his behalf, from: (i) threatening Plaintiff's physical safety and/or threatening to cause Plaintiff physical harm; and (ii) publishing and/or broadcasting any false and/or defamatory statements of and concerning Plaintiff's reputation, credibility and character as a writer and/or as a publisher/distributor of Urban's books/novel;

C.    Enter judgment against Defendant in an amount to be determined at trial, but in no event less than $500,000.00 (Five Hundred Thousand Dollars), representing compensatory damages for Plaintiff's defamation claims;

D.    Enter judgment against Defendant in an amount to be determined at trial, but in no event less than $1,000,000.00 (One Million Dollars), representing an award of punitive damages for Plaintiff's defamation claims based on Defendant's willful, intentional and malicious publication and uttering of false and defamatory statements of and concerning Plaintiff that Defendant knew to be false and completely untrue;

E.    Enter judgment against Defendant in an amount to be determined at trial, but in no event less than $300,000.00 (Three Hundred Thousand Dollars), representing an award of compensatory damages for Plaintiff's claim of intentional infliction of emotional distress;

F.    Award of Plaintiff his reasonable attorneys' fees, costs and expenses relating to this action; and

G.    Award any such other and further relief as the Court may deem just and proper.

Dated: New York, New York       Respectfully submitted,
      January 30, 2008

                                                      s/Paul Chin
                                      Paul A. Chin, Esq. (PC 9656)

LAW OFFICES OF PAUL A. CHIN
The Woolworth Building
233 Broadway, 5th Floor
New York, NY 10279
(212) 964-8030
*Attorneys for Plaintiff*

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial pursuant to Rule 38(b) of the Federal Rules of Civil

Procedure.

Dated: New York, New York                    Respectfully submitted,
      January 30, 2008

                                           s/Paul Chin
                                  Paul A. Chin, Esq. (PC 9656)
                                  LAW OFFICES OF PAUL A. CHIN
                                  The Woolworth Building
                                  233 Broadway, 5th Floor
                                  New York, NY 10279
                                  (212) 964-8030
                                  *Attorneys for Plaintiff*