UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| CARL WEBER | : | CASE NO.: 08 Civ 0983 (JGK) |
| | : | |
| Plaintiff | : | |
| | : | (ECF Case) |
| vs. | : | |
| | : | |
| JIHAD UHURU | : | |
| | : | |
| Defendant | : | |

**PLAINTIFF'S MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Dated: New York, New York
     August 18, 2008

Respectfully submitted,

Paul A. Chin, Esq. (PC 9656)
LAW OFFICES OF PAUL A. CHIN
The Woolworth Building
233 Broadway, 5th Floor
New York, NY 10279
(212) 964-8030
*Attorneys for Plaintiff*

## TABLE OF CONTENTS

INTRODUCTION…………………………………………………………    4
PRELIMINARY STATEMENT…………………………………………...    4
STATEMENT OF FACTS & PROCEDURAL HISTORY………………..    5

    A.     Plaintiff's service of the summons and Complaint…………    5

    B.     Defendant acknowledges receipt of the summons and
          Complaint…………………………………………………..    6

    C.     Plaintiff seeks entry of default judgment against Defendant.    6

    D.     Defendant's motion to dismiss for improper service of the
          summons and Complaint…………………………………..    7

LEGAL ARGUMENT…………………………………………………...    7

POINT I       DEFENDANT'S MOTION FAILS TO INVOKE A
             FED.R.CIV.P. 12(b)(5) OBJECTION TO THE
             SUFFICIENCY OF PLAINTIFF'S SERVICE OF PROCESS    7

POINT II      PLAINTIFF'S PROOF ESTABLISHES PROPER SERVICE
             OF PROCESS …………………………………………..    8

POINT III     DEFENDANT MUST PRESENT EVIDENCE REFUTING
             PLAINTIFF'S PROOF OF PROPER SERVICE…………..    11

CONCLUSION…………………………………………………………..    11

# TABLE OF AUTHORITIES

## CASES

Bellis v. Tokio Marine & Fire Insurance Co.,
No. 93 Civ. 6549 (DAB), 2002 WL 193149 (S.D.N.Y. Feb. 7, 2002) …….    7

Cheyenne Autumns, Inc. v. Mine & Bill's,
No: 94 Civ. 4011 (CSH), 1995 WL 366388 (S.D.N.Y. Jun. 19, 1995)……    9

Gould Entertainment Corp. v. Bodo,
107 F.R.D. 308 (S.D.N.Y. 1985)…………………………………………...    10

Grammenos v. Lemos,
457 F.2d 1067 (2d Cir. 1972)………………………………………………    10

J&J Sports Productions, Inc. v. Arnoat,
No. 06 Civ. 2103 (WHP), 2007 WL 2042981 (S.D.N.Y. July 12, 2007)…..    11

King v. Best Western Country Inn,
138 F.R.D. 39 (S.D.N.Y. 1991)……………………………………………    8-9

Koulkina v. The City of New York,
No. 06 Civ. 11357 (SHS), 2008 WL 463726 (S.D.N.Y. Feb. 19, 2008)…..    8

Krape v. PDK Labs, Inc.,
194 F.R.D. 82 (S.D.N.Y. 1999) …………………………………………...    8

Old Republic Insurance Co. v. Pacific Financial Services of America, Inc.,
301 F.3d 54 (2d Cir. 2002)…………………………………………………    11

Remington Investments, Inc. v. Seiden,
658 N.Y.S.2d 696 (2d Dept. 1997) ………………………………………..    11

Sassower v. City of White Plains,
No. 89 Civ. 1267, 1993 WL 378862 (S.D.N.Y. Sept. 24, 1993)…………..    11

Three Crowns Ltd. Partnership v. Caxton Corp.,
817 F.Supp. 1033 (S.D.N.Y. 1993) ………………………………………...    8

## RULES
Fed.R.Civ.P. 4(e)
Fed.R.Civ.P. 12(b)(5)
New York CPLR §308(1)
New York CPLR §308(2)
New York CPLR §308(4 )

## INTRODUCTION

Plaintiff Carl Weber (hereinafter "Plaintiff"), by and through his undersigned attorneys, hereby submits his memorandum of law in opposition to Defendant Jihad Uhuru's (hereinafter "Defendant") motion, pursuant to Rule 12(b)(5) of the Federal Rules of Civil Procedure ("Fed.R.Civ.P.") [1], to dismiss Plaintiff's Complaint for improper service of process (sometimes referred to herein as "Defendant's Motion").

## PRELIMINARY STATEMENT

On June 20, 2008, the Clerk of this Court entered Defendant's default in this action. On or about July 2, 2008, Plaintiff applied to this Court, via an order to show cause, for an order entering default judgment against Defendant.[2] Before this Court could rule on Plaintiff's Application, Defendant, on or about July 23, 2008, filed a motion to dismiss Plaintiff's Complaint on the grounds that he was improperly served with a copy of Plaintiff's summons and Complaint (i.e. Defendant's Motion). In his motion, Defendant argues that, even though the manner of service undertaken by Plaintiff resulted in Defendant's receipt of the summons and Complaint, Plaintiff's service was improper because Plaintiff served a copy of the summons and Complaint to an address where Defendant, *allegedly,* no longer resided.

Defendant's Motion fails to adequately invoke a Fed.R.Civ.P. 12(b)(5) objection to the sufficiency of Plaintiff's service of process. More importantly, it is undisputed

---

[1] Defendant claims that he was not properly served with a copy of Plaintiff's summons and Complaint; therefore, Plaintiff assumes that Defendant's Motion is based on Rule 12(b)(5) of the Fed.R.Civ.P.

[2] Plaintiff's Order to Show for Entry of Default Judgment Against Defendant Jihad Uhuru ("Plaintiff's Order to Show Cause") is attached hereto as "Exhibit 1;" Plaintiff's Application for Entry of Default Judgment ("Plaintiff' Application") is attached hereto as "Exhibit 2;" and Plaintiff's Memorandum of Law in Support of the Application for Entry of Default Judgment ("Plaintiff's Memorandum of Law") is attached hereto as "Exhibit 3."

that: (i) Plaintiff properly served Defendant with a copy of the summons and Complaint; (ii) the manner of service undertaken by Plaintiff resulted in Defendant's receipt of the summons and Complaint; and (iii) Defendant had actual notice of the pendency of these legal proceedings as a result of Plaintiff's service of process.

For the reasons stated herein, this Court should deny Defendant's Motion and grant the relief requested in Plaintiff's Application. Exhibit 2, at *"Exhibit C"* attached thereto.

## STATEMENT OF FACTS & PROCEDURAL HISTORY

**A.    Plaintiff's service of the summons and Complaint**

After commencing his action in this Court, Plaintiff, in accordance with Rule 4(e) of the Fed.R.Civ.P. and sections 308(1) and 308(2) of New York's Civil Practice Law & Rules ("CPLR"), attempted to serve Defendant with a copy of the summons and Complaint at Defendant's dwelling place/usual place of abode, located at 2400 Aveberry Court, SE, Conyers, Georgia 30013 (hereinafter the "Georgia Address"). Exhibit 3, at pg. 2 and at *"Exhibit C"* attached thereto. Despite his due diligence, Plaintiff's process server was unable to serve Defendant with a copy of the summons and Complaint at the Georgia Address. Id. at *"Exhibit C"* attached thereto. Plaintiff's process server was also unsuccessful in his attempt to serve Defendant with a copy of the summons and Complaint at an alternate address in Georgia. Id. at *"Exhibit D"* attached thereto.

Plaintiff ultimately effected service on Defendant, pursuant to CPLR §308(4), on March 25, 2008 and March 28, 2008 by: (i) affixing a copy of the summons and Complaint to the door of the home located at the Georgia Address; and (ii) mailing a copy of the summons and Complaint to Defendant at the Georgia Address. Exhibit 3, at

*"Exhibits C & E"* attached thereto. On or about April 8, 2008, Plaintiff filed his process server's affidavits of service with this Court. *See, Affidavits of Service (Court's Civil Docket #2[3]); see also* Exhibit 3, at *"Exhibits C & E"* attached thereto.

**B.    Defendant acknowledges receipt of the summons and Complaint**

On May 5, 2008, Defendant wrote a letter to this Court: (i) acknowledging his receipt of the copy of Plaintiff's summons and Complaint that was affixed, and mailed, to the Georgia Address on April 11, 2008; and (ii) requesting an extension of time in which file his answer thereto. Exhibit 3, at *"Exhibit F"* attached thereto. On May 14, 2008, this Court granted Defendant's request and ordered Defendant to file a response to Plaintiff's Complaint by June 13, 2008 (hereinafter the "Court's Order"). Id.

**C.    Plaintiff seeks entry of default judgment against Defendant**

Defendant failed to file his response to Plaintiff's Complaint by June 13, 2008, as required by the Court's Order. *See, Plaintiff's Request to Enter Default (Court's Civil Docket #5), at* "Exhibit 1, ¶¶4-6" and "Exhibit 4" attached thereto. As a result, Plaintiff filed a request for entry of default against Defendant with the Clerk of this Court. *See, Plaintiff's Request to Enter Default (Court's Civil Docket #5).* On June 20, 2008, the Clerk of this Court entered Defendant's default in this action. Id. at *"Exhibit 5" attached thereto.* Thereafter, Plaintiff applied to this Court, via an order to show cause, for entry of a default judgment against Defendant. Exhibits 1, 2 and 3. However, before this Court could rule on Plaintiff's Application, Defendant filed his motion to dismiss Plaintiff's action. *See, Defendant's Motion (Civil Court Docket #7).*

---

[3] The term *"Court's Civil Docket #"* refers to the S.D.N.Y.'s civil docket entries for this action.

**D.     Defendant's motion to dismiss for improper service of the summons and Complaint**

In his motion, Defendant contends that he was improperly served with process in this action because "[T]he suit [i.e. the summons and Complaint] was delivered to the defendants [sic] former address at 2400 Aveberry Ct. SE Conyers GA [sic] 30013, which has been vacant since January 6, 2008." *See, Defendant's Motion (Civil Court Docket #7) at Affirmation in Support of Motion ¶¶1-2.* Given these allegations, it must be assumed that Defendant's Motion seeks to invoke a Fed.R.Civ.P. 12(b)(5) objection to the sufficiency of Plaintiff's service of the summons and Complaint[4].

However, Defendant's Motion does not contain any allegations: (i) identifying the state or federal rule of civil procedure Plaintiff was required to follow in order to properly serve Defendant with a copy of the summons and Complaint; or (ii) specifying how Plaintiff's service of process was legally deficient. In addition, Defendant admits in his motion that he received a copy of Plaintiff's summons and Complaint, which was affixed and mailed to the Georgia Address, in April. *See, Defendant's Motion (Civil Court Docket #7) at Affirmation in Support of Motion ¶¶1-2.*

## LEGAL ARGUMENT

### POINT I
### DEFENDANT'S MOTION FAILS TO INVOKE A RULE 12(b)(5) OBJECTION TO THE SUFFICIENCY OF PLAINTIFF'S SERVICE OF PROCESS

On a motion to dismiss a plaintiff's complaint, under Fed.R.Civ.P. 12(b)(5), for insufficiency of service of process, the moving party (i.e. the defendant) bears the initial burden of presenting a *prima facie* case demonstrating that the manner or method of the

---

[4] *See,* Bellis v. Tokio Marine & Fire Insurance Co., No. 93 Civ. 6549 (DAB), 2002 WL 193149 at *15 (S.D.N.Y. Feb. 7, 2002) ("Rule 12(b)(5) is the proper provision to challenge 'the mode of delivery or the lack of delivery of the summons and complaint'.").

plaintiff's service of process was legally deficient. <u>Krape v. PDK Labs, Inc.</u>, 194 F.R.D. 82, 84 (S.D.N.Y. 1999) (In all challenges to the sufficiency of service of process, the burden of proof lies with the party challenging service). In order to meet this burden, the defendant's Rule 12(b)(5) motion to dismiss "…must be specific and point out the manner in which plaintiff has failed to satisfy requirements of the service provision utilized." <u>Three Crowns Ltd. Partnership v. Caxton Corp.</u>, 817 F.Supp. 1033, 1050 (S.D.N.Y. 1993). Defendant's Motion fails to meet this burden.

Defendant's Motion neither identifies the particular state or federal rule of civil procedure that Plaintiff was required to follow in order to "properly" serve Defendant in this action, nor does it contain any allegations specifying how Plaintiff's service of process on Defendant was legally deficient. In addition, Defendant did not attach to his motion any supporting affidavits attesting to the alleged deficiency of Plaintiff's service of process. The absence of the aforementioned information, in Defendant's Motion, is fatal to Defendant's ability to invoke a Rule 12(b)(5) objection to the sufficiency of Plaintiff's service of process. <u>Koulkina v. The City of New York</u>, No. 06 Civ. 11357 (SHS), 2008 WL 463726 at *7 (S.D.N.Y. Feb. 19, 2008) (denying defendant's Rule 12(b)(5) motion to dismiss where defendant failed to specify "how service upon him was deficient…" and did not "identify the legal provision governing service that plaintiffs allegedly failed to satisfy.").

## POINT II
## PLAINTIFF'S EVIDENCE ESTABLISHES PROPER SERVICE OF PROCESS

When a defendant presents a motion to dismiss that adequately invokes a Rule 12(b)(5) objection to the sufficiency of the plaintiff's service of process then "…the burden of proof to establish proper service of process [is] upon plaintiffs." <u>King v. Best</u>

Western Country Inn, 138 F.R.D. 39, 43 (S.D.N.Y. 1991). A plaintiff can prove that his service of process was proper by demonstrating that the service effected on the defendant was reasonably calculated to provide the defendant with notice "...of the pendency of the action and afford [Defendant] an opportunity to present [his] objections." Cheyenne Autumns, Inc. v. Mine & Bill's, No: 94 Civ. 4011 (CSH), 1995 WL 366388 at *4 (S.D.N.Y. Jun. 19, 1995). Because Defendant resides in the State of Georgia, Rule 4(e) of the Fed.R.Civ.P. and section 308(4) of the CPLR governed the manner of Plaintiff's service of the summons and Complaint on Defendant.

Fed.R.Civ.P. 4(e)(1) provides that service may be effected upon an individual "pursuant to the law of the state in which the district court is located." CPLR §308(4) provides, in pertinent part, that:

> "where service under paragraphs one and two cannot be made with due diligence, by affixing the summons to the door of either the actual place of business, dwelling place or usual place of abode within the state of the person to be served and by either mailing the summons to such person at his or her last known residence or by mailing the summons by first class mail to the person to be served at his or her actual place of business in an envelope bearing the legend "personal and confidential" and not indicating on the outside thereof, by return address or otherwise, that the communication is from an attorney or concerns an action against the person to be served, such affixing and mailing to be effected within twenty days of each other..."

The evidence in this case clearly demonstrates that Plaintiff's service of the summons and Complaint on Defendant was proper.

Despite his due diligence, Plaintiff's process server was unable to serve Defendant pursuant to CPLR §308(1) or CPLR §308(2). Exhibit 3, at "Exhibits C & D" attached thereto. As a result, Plaintiff, in accordance with CPLR §308(4), served Defendant with a copy of the summons and Complaint: (i) on March 25, 2008, by

affixing a copy of the summons and Complaint to Defendant's usual place of abode located in Conyers, Georgia (i.e. the Georgia Address); and (ii) on March 28, 2008, by mailing a copy of the summons and Complaint to Defendant at his last known residence located in Conyers, Georgia (i.e. the Georgia Address). Id. at *"Exhibits C & E"* attached thereto. Plaintiff's service of his summons and Complaint on Defendant at the Georgia Address was reasonably calculated to apprise Defendant of the pendency of these legal proceedings because Defendant previously acknowledged receipt of a "cease and desist" letter that Plaintiff's attorney mailed to Defendant at the Georgia Address on or about November 27, 2007.   Id. at *"Exhibits A & B"* attached thereto; *see also* Gould Entertainment Corp. v. Bodo, 107 F.R.D. 308 (S.D.N.Y. 1985) (service was proper upon the defendant when delivered to an address which defendant had used in communicating with plaintiff throughout contract negotiations and used on his letterhead, even though defendant later claimed that it was not his actual residence).   Plaintiff filed his process server's affidavits of service with this Court on or about April 4, 2008.  *See, Affidavits of Service (Court's Civil Docket #2); and* Exhibit 3, at *"Exhibits C & E"* attached thereto.

Plaintiff's service of process on Defendant: (i) resulted in Defendant's receipt of the summons and Complaint in this action on April 11, 2008; (ii) provided Defendant with actual notice of these legal proceedings; and (iii) afforded Defendant an opportunity to present his objections to these proceedings to this Court.  Exhibit 3, at *"Exhibit F"* attached thereto.   Therefore, Plaintiff's service of process on Defendant was in accordance with, and satisfied the due process requirements of, Fed.R.Civ.P. 4(e) and CPLR §308(4).  *See,* Grammenos v. Lemos, 457 F.2d 1067, 1070 (2d Cir. 1972)

(Fed.R.Civ.P. is to be liberally construed "...to further the purpose of finding personal jurisdiction in cases in which the party has received actual notice.").

## POINT III
### DEFENDANT MUST PRESENT EVIDENCE REFUTING PLAINTIFF'S PROOF OF PROPER SERVICE

Plaintiff's process server's affidavits of service constitute credible evidence that service of process on Defendant was proper. <u>Remington Investments, Inc. v. Seiden</u>, 658 N.Y.S.2d 696, 697 (2d Dept. 1997) ("The affidavits of the process server constitute prima facie evidence of proper service pursuant to [CPLR 308]..."); <u>Old Republic Insurance Co. v. Pacific Financial Services of America, Inc.</u>, 301 F.3d 54, 57 (2d Cir. 2002) (adhering to the New York standard by presuming proper service from a server's affidavit). As a result, Defendant bears the burden of presenting evidence refuting Plaintiff's proof of proper service; however, conclusory allegations by Defendant that he was "improperly served" will be insufficient to meet this burden. <u>J&J Sports Productions, Inc. v. Arnoat</u>, No. 06 Civ. 2103 (WHP), 2007 WL 2042981 at *1 (S.D.N.Y. July 12, 2007) ("Where an independent process server files an affidavit affirming that the requirements of Rule 4(e) have been complied with, "[t]he mere denial of receipt of service ... is insufficient to overcome the presumption of validity" of that affidavit."); <u>Sassower v. City of White Plains</u>, No. 89 Civ. 1267, 1993 WL 378862 at *7 (S.D.N.Y. Sept. 24, 1993) ("a bare allegation by a defendant that he was improperly served cannot be allowed to bely the private process server's return.").

## CONCLUSION

For the reasons stated above, this Court should deny Defendant's Motion and grant the relief requested in Plaintiff's Application.

Dated: August 18, 2008
      New York, New York

Respectfully submitted,

_____
Paul A. Chin, Esq. (PC9656)
LAW OFFICES OF PAUL A. CHIN
The Woolworth Building
233 Broadway, 5th Floor
New York, NY 10279
(212) 964-8030
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

On the 18th day of August, 2008, a true and correct copy of PLAINTIFF'S

MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO

DISMISS, and the documents and exhibits attached thereto, was served, via first-class

mail, postage pre-paid, and placed in an official depository under the exclusive care and

custody of the United States Postal Service within the State of New York, to:

Jihad Uhuru
2324 Fountainhead Cir.
Conyers, GA 30013
*Pro-se Defendant*

8-18-08
_____
Date

Paul A. Chin, Esq. (PC9656)
LAW OFFICES OF PAUL A. CHIN
The Woolworth Building
233 Broadway, 5th Floor
New York, NY 10279
(212) 964-8030
*Attorneys for Plaintiff*

**PLAINTIFF'S MEMORANDUM OF LAW**
**IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

# "EXHIBIT 1"

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| CARL WEBER | : | CASE NO.: 08 Civ 0983 (JGK) |
| Plaintiff | : | (ECF Case) |
| vs. | : | |
| JIHAD UHURU | : | |
| Defendant | : | |

## PLAINTIFF'S ORDER TO SHOW CAUSE FOR ENTRY OF DEFAULT JUDGMENT AGAINST DEFENDANT JIHAD UHURU

**UPON** reading plaintiff Carl Weber's ("Plaintiff") Request to Enter Default against defendant Jihad Uhuru ("Defendant"), and the exhibits attached thereto, dated June 20, 2008, Plaintiff's application for entry of default judgment against Defendant, and the exhibits attached thereto, dated July 2, 2008, the memorandum of law in support of Plaintiff's application for entry of default judgment, and the exhibits attached thereto, dated July 2, 2008, and upon all of the prior papers and pleadings filed in this action and the prior proceedings had herein, it is hereby

**ORDERED** that Defendant, and/or his attorneys, **SHOW CAUSE** before this Court at the U.S. District Courthouse for the Southern District of New York located at 500 Pearl Street, New York, New York, Courtroom 12B on the _____ day of July, 2008, or as soon thereafter as Defendant and/or his counsel can be heard, why an order granting Plaintiff's application for entry of default judgment, pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure and Rule 55.2(b) of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York, should not be entered against Defendant in this action; and it is further,

**ORDERED**, that service of a copy of this Order, together with all of the papers, documents, pleadings and exhibits attached thereto and submitted in support thereof, shall be made upon Defendant, via certified mail, return receipt requested, at the following address: 2324 Fountainhead Cir., Conyers, Georgia 30013 and that such service be deemed sufficient, if effectuated before _____, 2008.

**ENTER,**

Dated: _____          _____
                                      United States District Court Judge

2

**PLAINTIFF'S MEMORANDUM OF LAW**
**IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

# "EXHIBIT 2"

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| CARL WEBER | : | CASE NO.: 08 Civ 0983 (JGK) |
| | : | |
| Plaintiff | : | |
| | : | (ECF Case) |
| vs. | : | |
| | : | |
| JIHAD UHURU | : | |
| | : | |
| Defendant | : | |

## PLAINTIFF'S APPLICATION FOR ENTRY OF DEFAULT JUDGMENT

Pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure ("Fed.R.Civ.P.") and Rule 55.2(b) of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York (the "Local Civil Rules"), plaintiff CARL WEBER (hereinafter "Plaintiff"), by and through his undersigned attorneys, respectfully submits this application for entry of default judgment against defendant JIHAD UHURU (hereinafter "Defendant") for Defendant's failure to answer or otherwise respond to Plaintiff's summons and Complaint and Defendant's failure to appear or otherwise defend in this action (hereinafter "Plaintiff's Application").

Plaintiff's Application is supported by: a memorandum of law, and the exhibits attached thereto, dated July 2, 2008; Plaintiff's Request for Entry of Default, and the exhibits attached thereto, filed with the Clerk of this Court on June 20, 2008; and all other prior pleadings and papers filed in this action and the prior proceedings had herein. In addition, pursuant to Local Civil Rule 55.2(b), Plaintiff has attached to this Application: (1) the Clerk of Court's certificate of default against Defendant (attached hereto as Exhibit A); (2) a copy of Plaintiff's Complaint to which no response has been

made (attached hereto as Exhibit B); and (3) a proposed form of default judgment against Defendant (attached hereto as Exhibit C).

For the reasons stated herein, and more fully explained in the accompanying memorandum of law, Plaintiff respectfully requests that this Court:

A.      grant Plaintiff's application for entry of default judgment against Defendant;

B.      order the relief requested in the proposed form of default judgment against Defendant; and

C.      order any such other or further relief the Court deems just and proper.

Dated: New York, New York
      July 2, 2008

Respectfully submitted,

Paul A. Chin, Esq. (PC 9656)
LAW OFFICES OF PAUL A. CHIN
The Woolworth Building
233 Broadway, 5th Floor
New York, NY 10279
(212) 964-8030
*Attorneys for Plaintiff*

TO:    Jihad Uhuru
      2324 Fountainhead Cir.
      Conyers, GA 30013
      *Pro-se Defendant*

# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| CARL WEBER | : | CASE NO.: 08 Civ 0983 (JGK) |
| | : | |
| Plaintiff | : | |
| | : | **CLERK'S CERTIFICATE** |
| vs. | : | |
| | : | (ECF Case) |
| JIHAD UHURU | : | |
| | : | |
| Defendant | : | |

I, J. Michael McMahon, Clerk of the United States District Court for the Southern

District of New York, do hereby certify that this action commenced on January 30, 2008

with the filing of a Complaint, a copy of the summons and Complaint was served on

defendant Jihad Uhuru pursuant to Rule 4(e)(1) of the Federal Rules of Civil Procedure

and New York's Civil Practice Law & Rules §308(4) on March 25, 2008 and March 28,

2008 and proof of such service thereof was filed with the Court on April 8, 2008; that by

order of the Honorable John G. Koeltl, dated May 14, 2008, defendant Jihad Uhuru was

required to respond to Plaintiff's summons and Complaint by June 13, 2008.

I further certify that the docket entries for this action indicate that defendant Jihad

Uhuru did not respond to Plaintiff's summons and Complaint by June 13, 2008, as

required by the Court's order dated May 14, 2008; that defendant Jihad Uhuru has not

pled or otherwise responded to Plaintiff's summons and Complaint and has not appeared

in this action. The default of defendant Jihad Uhuru is hereby noted.

**J. MICHAEL McMAHON**
**Clerk of the Court**

Dated: _____6/20/08_____

By: _____
**Deputy Clerk**

# EXHIBIT B

JUDGE KOELTL

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

08 CV 0983

| | | |
|---|---|---|
| CARL WEBER | : | CASE NO.: |
| Plaintiff | : | COMPLAINT & DEMAND FOR JURY TRIAL |
| vs. | : | |
| JIHAD UHURU | : | JAN 3 0 2008 |
| Defendant | : | U.S.D.C. S.D. N.Y. CASHIERS |

Carl Weber ("Plaintiff"), by and through his undersigned attorney, Paul A. Chin,

Esq., alleges upon knowledge to himself and upon information and belief as to all other

matters as follows:

### NATURE OF THE CASE

1.    This is a civil action for, *inter alia,* defamation and intentional infliction of

emotional distress arising out of knowingly false and defamatory statements of and

concerning Plaintiff's reputation and character repeatedly published and/or broadcasted

by Jihad Uhuru (hereinafter "Defendant") to vast numbers of third parties in the State of

New York and throughout the United States, which has caused injury to Plaintiff's

reputation and character and has detrimentally affected him personally and

professionally.

2.    Defendant has also repeatedly threatened Plaintiff with severe bodily harm

causing Plaintiff to reasonably believe that such severe bodily harm was imminent.

Defendant's numerous statements to Plaintiff threatening severe bodily harm have caused

Plaintiff to reasonably fear for his safety and have caused Plaintiff severe emotional

distress, mental anguish, fear and worry.

3.      This action also seeks preliminary and permanent injunctive relief restraining and enjoining Defendant from continuing to: (i) publish and/or communicate false and defamatory statements of and concerning Plaintiff to numerous third parties; (ii) harass and threaten Plaintiff with severe bodily harm; and (iii) tortiously interfere with Plaintiff's business relationships.

4.      Defendant has, on numerous occasions, made statements to numerous third parties of and concerning Plaintiff containing vile, cruel, offensive, threatening and morally reprehensible statements regarding Plaintiff's reputation and character that are so outrageous in character and extreme in degree as to go beyond all possible bounds of decency and are utterly intolerable in a civilized society.

5.      By this action, Plaintiff seeks a finding that: (i) Defendant knowingly, willfully, intentionally and repeatedly published and/or broadcasted, in the State of new York and throughout the United States, false and defamatory statements of and concerning Plaintiff's personal and professional reputation and character to vast numbers of third parties; (ii) Defendant knowingly, willfully and intentionally threatened Plaintiff with immediate bodily harm; (iii) Defendant knew that his statements of and concerning Plaintiff's character and reputation were false and completely untrue and/or made these statements in reckless disregard of the truth; (iv) Defendant willfully and intentionally inflicted severe emotional distress on Plaintiff by threatening Plaintiff with immediate physical harm and by repeatedly publishing vile, cruel, offensive, lewd and morally reprehensible statements about Plaintiff's character and reputation to numerous third parties located in the State of New York and throughout the United States; and (v) Plaintiff has suffered, and continues to suffer, severe economic and non-economic

damages, including but not limited to severe mental anguish, emotional distress, anxiety and constant worry as a result of Defendant's willful, purposeful and intentional misconduct.

6.    Plaintiff is entitled to all legal, equitable and financial relief, including, but not limited to preliminary and permanent injunctive relief, as requested herein, to remedy Defendant's willful, purposeful and intentional misconduct.

### JURISDICTION AND VENUE

7.    Plaintiff is a citizen of the state of New York for purposes of diversity jurisdiction under 28 U.S.C. §1332.

8.    Upon information and belief, Defendant is a citizen of the state of Georgia for purposes of diversity jurisdiction under 28 U.S.C. §1332.

9.    This Court has original subject matter jurisdiction with respect to this action pursuant to 28 U.S.C. §1332 (a)(1) as there exists complete diversity of citizenship between Plaintiff and Defendant and the amount in controversy exceeds Seventy Five Thousand Dollars ($75,000.00), exclusive of interest and costs.

10.    This Court has personal jurisdiction over Defendant because Defendant has willfully, intentionally and purposefully committed wrongful acts in the State of New York and has caused harm to Plaintiff in the State of New York, where Plaintiff resides.

11.    Venue is properly laid in this District pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

### PARTIES

12.    Plaintiff is a well known author and has written several best selling novels. Plaintiff is signed to an exclusive writer's contract with a major New York publishing

3

company and, as a part of this contract, Plaintiff must conduct book tours in which he travels across the country to meet with fans, appear on various radio stations and conducts interviews with various newspapers and magazines.

13.    Plaintiff is also the majority owner, and managing member, of the book publishing/distribution company known as Urban Books, LLC. (hereinafter "Urban"). Urban is a New York limited liability company which has entered into several exclusive writer contracts with numerous well known authors (hereinafter "Urban's Authors") and is the exclusive publisher/distributor of books written by Urban's Authors.    Urban currently has an exclusive publishing/distribution agreement with a major New York publishing/distribution company (hereinafter "Distributor"), through which Urban publishes and distributes books written by Urban's Authors throughout the United States.

14.    Upon information and belief, Defendant lives and works in Conyers, Georgia. Upon information and belief, Defendant is a convicted felon and has served time in a federal penitentiary.

### FACTS COMMON TO ALL CLAIMS FOR RELIEF

**Plaintiff's business relationship with Defendant**

15.    On or about December 1, 2003, Plaintiff, on behalf of Urban, entered into an exclusive writer's agreement with Defendant (the "December 2003 Contract"). Pursuant to the December 2003 Contract Defendant was required to write two (2) books/novels which would be exclusively published and commercially distributed in the United States by Urban.

16.    On or about June 1, 2004, Plaintiff, on behalf of Urban, entered into a second exclusive writer's agreement with Defendant (the "June 2004 Contract").

Pursuant to the June 2004 Contract Defendant was required to write a third book/novel which would be exclusively published and commercially distributed in the United States by Urban.

17.    At the time Plaintiff entered into the December 2003 and June 2004 Contracts with Defendant, Defendant was a relatively unknown author.

18.    Pursuant to the December 2003 and June 2004 Contracts, Urban published and commercially distributed three (3) novels/books written by Defendant (hereinafter "Defendant's Books").    Despite national distribution, Defendant's Books achieved limited commercial/ financial success.

**Origin of Defendant's animosity towards Plaintiff**

19.    Upon information and belief, Defendant blamed Plaintiff for the lackluster sales performance of Defendant's Books and, on or about November, 2006, Defendant confronted Plaintiff via telephone regarding sales of his third novel with Urban.

20.    During this confrontation, Defendant claimed that Plaintiff, and/or Urban, purposefully engaged in conduct calculated to sabotage and/or undermine the commercial success of Defendant's Books. Plaintiff vehemently denied Defendant's accusations specifically pointing out to Defendant that, as the exclusive publisher/distributor of Defendant's Books, Urban's financial success as a book publisher and distributor is completely dependent on the commercial success of the books/novels written by Urban's Authors.

21.    Despite the absurdity of his allegations, Defendant remained, and remains, convinced that Plaintiff and/or Urban were solely responsible for the poor sales of Defendant's Books; as a result, Defendant engaged in a systematic and continuous

campaign to: (i) defame Plaintiff's character and reputation to, among other third-parties, Plaintiff's fans; (ii) threaten Plaintiff with immediate and severe bodily harm; and (iii) disrupt and/or tortiously interfere with Plaintiff's business relationships with Urban's Authors and Urban's Distributor (collectively referred to herein as the "Campaign" or "Defendant's Campaign").

**Defendant's verbal defamatory and threatening statements**

22.    On or about October 30, 2007, Defendant was interviewed by Torrian Ferguson (hereinafter "Mr. Ferguson") on the website www.artistfirst.com, which was repeatedly published and/or broadcasted, in the State of New York and throughout the United States, over the world wide web to hundreds, if not thousands, of on-line third-party listeners (the "Artistfirst Interview").

23.    During the Artistfirst Interview, Defendant willfully and intentionally: (i) made numerous statements of fact concerning Plaintiff's character and reputation which were knowing false and completely untrue; (ii) threatened Plaintiff with immediate and severe bodily harm; and (iii) made knowingly false statements of fact concerning Plaintiff tending to injure Plaintiff in his business and profession.

24.    During the Artistfirst Interview, Defendant falsely stated that Plaintiff engages in subversive conduct to personally attack African-American female book authors: *"These are some of the subversive things that Carl Weber does...It's the personal attacks that he's* [Plaintiff] *done, that he attacked so many queens in this industry* [African-American female book authors], *within Urban, outside of Urban...so many queens in this industry that he's made personal attacks on . . . You* [Plaintiff] *tryin'*

to make yourself look bigger, and by belittling a woman. . . . You put all kinds of subversive stuff out there about these sisters."

25.    During the Artistfirst Interview, Defendant also falsely stated that Plaintiff engages in conduct calculated to undermine the commercial success of Urban's female authors: "*A lot of these sisters from Urban* [Urban's female book authors], *he's putting their books out there 'til forever, you know, 2009, 2010...I talk to sisters from Urban all the time . . . they say why is he doing this to me? . . . some of these sisters sound like they almost suicidal.*"

26.    When asked during the interview why Plaintiff would seek to undermine the commercial success of his own writers, Defendant responded that Plaintiff was trying to "ruin" these authors: "*It's the power and the control. It's the power of 'I* [Plaintiff] *can ruin you* [Urban's female authors]. *. . . I got the control of God. . . . your book is supposed to come out in 2008, but in THE CONTRACT, I can put it off until 2010. I can do this because I'm God.' You know, it's the God complex that he* [Plaintiff] *has.*"

27.    Defendant's knowingly false and defamatory statements of fact concerning Plaintiff, as detailed paragraphs 23 to 26 herein, were repeatedly published in the State of New York and throughout the United States, over the world-wide web, to numerous third-parties listening to the Artistfirst Interview on the Artistfirst website.

28.    As a direct and proximate result of the repeated publication of Defendant's knowingly false and defamatory statements of fact concerning Plaintiff, as detailed in paragraphs 23 to 26 herein, Plaintiff has suffered, and continues to suffer, severe economic and non-economic injury.

7

29. During the Artistfirst Interview, Defendant also made the following statements threatening Plaintiff with immediate and severe bodily injury: "*He* [Plaintiff] *sent me an email last year saying that I was dead in the industry, and he picked the wrong person to say that to . . . I got bail money . . . I'm gonna see him again . . . I'm not gonna call you the bitch that you are . . . He* [Plaintiff] *thought this was over. It ain't over. This is real life, baby. This is real . . . I don't play. I'm promising you* [Plaintiff] *that it's on . . . I've done things to people for much less."*

30. Defendant also made the following statements threatening Plaintiff's life: "*Some little demented voice is whispering in his* [Plaintiff] *ear and saying that everybody is talking about him and everybody is conspiring against him. Well, I tell people, you can't justify a crazy person* [Plaintiff] *. . . What you need to a mad dog, you need to put him to sleep, you need to shoot him, you need to kill him . . . if you can't treat him, if you can't heal him, you need to put him to sleep."*

31. During the interview, Defendant confirmed his present ability to cause Plaintiff severe bodily injury: "*I'm gonna show him* [Plaintiff] *. . . I'm not gonna hide, I'm not gonna put my head between my legs . . . I can get on a plane . . . and if I'm gonna get you* [Plaintiff]*, they don't got enough bodyguards, they don't HAVE enough bodyguards . . . to stop me from touchin' you, and talkin' to you, and gettin' you to look me in the eye, and sayin' some of that bullshit you said when you done made up that fake email address . . ."*

32. Defendant's statements threatening Plaintiff with immediate and severe bodily harm, as detailed in paragraphs 29 to 31 herein, were unjustifiable and were intentionally made by Defendant for the sole purpose of placing Plaintiff in fear of his

8

physical safety. As a result, Plaintiff reasonably believed that Defendant had the ability to, and would, cause him severe physical injury.

33.    During the Artistfirst Interview, Defendant also made the following false and defamatory statements of fact tending to injure Plaintiff in his profession as a writer and his business as a publisher/distributor of Urban's Authors: *"It's just a matter of time, and you can see the writing on the wall. If you look at Urban's bestselling authors of two, three years ago, they're not there no more. You know, I was one of 'em . . . LaJill Hunt was one of—she was one . . .He's* [Plaintiff] *killin' himself. The man* [Plaintiff] *is killin' himself. Urban is on the way out."*

34.    Defendant also made false and defamatory statements suggesting that Plaintiff takes advantage of authors who sign writer contracts with Urban and that Plaintiff engages in unethical business practices: *"A lot of [Urban's] authors are scared to step up and make some noise . . . they're still into their deals . . . or they worried about if I say something about him, he's* [Plaintiff] *not gonna give me my royalties.' Well hell, he not givin' you your right royalties anyway, nine times outta ten...You get very skeptical when you do see [your books] all the time, and you know you're doing major numbers, and you get a two, three hundred dollar check. It does make you question why..."*

35.    Defendant's knowingly false and defamatory statements of fact concerning Plaintiff, as detailed paragraphs 33 to 34 herein, were published to numerous third-parties listening to the Artistfirst Interview which was repeatedly published and/or broadcasted in the State of New York and throughout the United States on the Artistfirst

website; and were intentionally made for the purpose of injuring Plaintiff in his profession as a writer and his business as a book publisher/distributor.

36.    On or about November 30, 2007, Defendant gave a public speech at an author book signing in Harlem, sponsored by The Urban Book Source which was repeatedly published and/or broadcasted in the State of New York and throughout the United States via the world wide web to hundreds, if not thousands of on-line third-party listeners (the "Urban Book Source Interview"). During the Urban Book Source Interview, Defendant willfully and intentionally: (i) made numerous statements of fact concerning Plaintiff's character and reputation which were knowing false and completely untrue; (ii) threatened Plaintiff with immediate and severe bodily harm; and (iii) made knowingly false statements of fact concerning Plaintiff tending to injure Plaintiff in his business and profession.

37.    During the Urban Book Source Interview, Defendant, again, made statements falsely claiming that Plaintiff intentionally sought to demoralize and/or undermine the commercial success of Urban's female authors: *"The bitch* [Plaintiff] *is fuckin' with all these damn sistahs* [Urban's female authors]*...He* [Plaintiff] *done put these sistahs' book, um, way back . . . like to 2009, 2010; they joints* [the female authors' books] *supposed to be out now and next year, you know what I'm sayin'?...I told the motherfucker* [Plaintiff], *I said, 'Nigga* [Plaintiff], *fuck with me. . . .He* [Plaintiff] *talked dirt about Zane* [a female author with Urban], *he talked dirt about Vickie* [a female author with Urban] *to try to bring hisself* [Plaintiff] *up...he's* [Plaintiff] *messin' with these queens out here and they ain't did nothin' to him, got 'em stressin', got 'em losin' weight, and they' ain't done nothin' . . . "*

10

38.    Defendant's knowingly false and defamatory statements of fact concerning Plaintiff, as detailed in paragraph 37 herein, were repeatedly published in the State of New York and throughout the United States to numerous third-parties listening to the Urban Book Source Interview via the Urban Book Source website.

39.    As a direct and proximate result of the publication of Defendant's knowingly false and defamatory statements of fact concerning Plaintiff, as detailed in paragraph 37 herein, Plaintiff has suffered, and continues to suffer, severe economic and non-economic injury.

40.    During the Urban Book Source Interview, Defendant also made the following statements threatening Plaintiff with immediate and severe bodily injury: *"I told the motherfucker [Plaintiff], I said, 'Nigga [Plaintiff], fuck with me. Fuck with a real motherfucker, you know what I'm sayin'? . . . I got bail money, you little fuckin' midget [Plaintiff]. . ."*

41.    Defendant also indicated during the interview that he made at least one prior attempt to catch Plaintiff off-guard and cause him harm: *"I went to BEA, layin' for his [Plaintiff] bitch ass, uh, and the bitch motherfucker didn't show up . . . I ain't got no talk for him [Plaintiff], I got no conversation for him, I ain't even gonna say hi to this motherfucker [Plaintiff], know what I'm sayin'? I'm gonna bitch-slap the fuck outta his ass . . . I got bail money . . . the motherfucker [Plaintiff] didn't show up, okay? I was at Black Expo. His [Plaintiff] whole fuckin' entourage was up in Indianapolis . . . I went to do signings 'cause I heard this bitch motherfucker [Plaintiff] was gonna be there, you know. This motherfucker [Plaintiff] pulled another no-show, you know."*

11

42.    Defendant's statements threatening Plaintiff with immediate and severe bodily harm, as detailed in paragraphs 40 to 41 herein, were unjustifiable and were intentionally made by Defendant for the sole purpose of placing Plaintiff in fear of his physical safety. As a result, Plaintiff reasonably believed that Defendant had the ability to, and would, cause Plaintiff physical injury.

43.    During the Urban Book Source Interview, Defendant also made the following false and defamatory statements of fact tending to injure Plaintiff in his profession as a writer and his business as a publisher/distributor of Urban's Authors: *"This motherfucker [Plaintiff] sellin' books three dollars, three dollars and fifty cent a book out to the street vendors . . . how the fuck can authors get paid . . . how the fuck Kensington get paid, the author get paid, and this punk-ass nigga [Plaintiff] get paid, you know what I'm sayin', and he [Plaintiff] sellin' shit three dollars and fifty cent a book. Hell no...I got a legitimate beef, as well as every Urban author . . . every Urban author that's been there for the last few years, that's got a few books out...He's [Plaintiff] fuckin' up this industry..."*

44.    Defendant's knowingly false and defamatory statements of fact concerning Plaintiff, as detailed in paragraph 43 herein, were repeatedly published in the State of New York and throughout the United States to numerous third-parties listening to the Urban Book Source Interview via the Urban Book Source website; and were intentionally made for the purpose of injuring Plaintiff in his profession as a writer and his business as a book publisher/distributor.

**Defendant's written defamatory and threatening statements**

45.    Defendant has repeatedly written knowingly false statements of fact concerning Plaintiff's personal and professional character and reputation and repeatedly published, in the State of New York and throughout the United States, these written statements to vast numbers of third-parties via various websites and "blogs" available on the world-wide web, where instant access and global spread make Defendant's acts all the more serious and onerous.

46.    On or about December 10, 2007, Defendant published, in the State of New York and throughout the United States, the following false and defamatory statement concerning Plaintiff on the website identified as "AOL Black Voices" and on an internet "blog" identified as "The Urban Book Source" to various third-parties: *"Wow? I see the laptop warrior* [Plaintiff], *e-mail general* [Plaintiff], *computer soldier* [Plaintiff] *is still hiding behind his* [Plaintiff] *multiple personality-screen names, just as he* [Plaintiff] *hides behind an attorney. For all who don't know, I am the author Jihad. And I don't need fake names to hide behind, nor an attorney. Yes the little midget* [Plaintiff], *whom I refer to as Mighty Mouth* [Plaintiff] *is a COWARD. Oops, I can't say that cause It is suing me. LOL...It was real tough threatening and downing several queens in the literary industry, calling them names I won't repeat. But when I stood up to it, he* [Plaintiff] *put his tail between his legs and went crying to an attorney the authorities, and playing on message boards. What's wrong Super star-laptop warrior* [Plaintiff], *you scared of me letting everyone know about your MENTALLY DERANGED* [Plaintiff] *ass. . . . I think the world knows who you are Little Man* [Plaintiff] . . . "

13

47.    On or about December 10, 2007, Defendant published, in the State of New York and throughout the United States, the following false and defamatory statement tending to injure Plaintiff in his profession as a writer and his business as a book publisher/distributor on the website identified as "AOL Black Voices" and on an internet "blog" identified as "The Urban Book Source" to various third-parties: *"Are you [Plaintiff] going to sue me for you telling me to fire my agent back in 03, because you didn't want to deal with agents. Are you going to sue me for signing me in Nov. of 2003 under URBAN BOOKS and releasing my first book Street Life one month later in December 2003...Mighty Mouth [Plaintiff], are you going to sue me for telling everyone how you [Plaintiff] re-released my first book Street Life in October 2004 under Urban Books and changed the title. No, I got it, I guess your [Plaintiff] little half-pint ass is going to sue me for 3.75 and 4.00 Urban Book titles you've sold to stores, that I have invoices for (new Urban titles) all i want to know is how do you pay the authors if you selling books so cheap...Oh hell, I guess Mighty mouth [Plaintiff] is going to sue me some more. If this sounds like the rantings and ravings of a deranged person, then ask some Urban Authors who've been with Urban a while. . . . And by the way I am available for interview if anyone is interested and want to know the scoop on Mighty Mouth [Plaintiff] and his [Plaintiff] cowardly dealings..."*

48.    On or about December 2, 2007, Defendant sent the following e-mail to Plaintiff threatening Plaintiff with immediate and severe physical injury: *"I got that you know little man [Plaintiff], you have to be the stupidest, think-they smart motha-fucka in the world...so tell Mr. Chin this, research Mrs. Adderly who was convicted of literary fraud earlier this year, I got so much dirt on your ass I could write a book...I promise*

14

*you that me and several others will go to the F.B.I. not an attorney but the F.B.I. with*

*proof and timelines of all that you've done. You've left a paper trail dude and let this be a*

*notice you have 1 week to get with me and do right by all the authors you've*

*wronged...trust me little man* [Plaintiff] *you don't won't this, I promise you don't.... "*

49.    Upon information and belief, many individuals who have read and/or
heard Defendant's false and defamatory statements concerning Plaintiff, as detailed in
paragraphs 23-26, 33-34, 37, 43 and 46-47 herein, believe that Defendant's statements
are true.

50.    Upon information and belief, Defendant's false and defamatory statements
concerning Plaintiff, as detailed in paragraphs 23-26, 33-34, 37, 43 and 46-47 herein,
have detrimentally affected, or will detrimentally effect Plaintiff's profession as a writer
and negatively impact Plaintiff's book publishing/distributing business.

51.    Furthermore, Defendant's numerous, and continuous, verbal and written
threats of violence against Plaintiff, as detailed in paragraphs 29-32, 40-41 and 48 herein,
has placed Plaintiff in constant fear of physical harm from Defendant and has directly and
proximately caused Plaintiff severe emotional distress and mental anguish.

52.    As of the filing date of this Complaint, Defendant continues to be engaged
in the conduct detailed in paragraphs 19 to 48 herein, despite Plaintiff's written demand
that he cease such conduct immediately.

**Injunctive relief is necessary and appropriate**

53.    Defendant's false and defamatory statements of and concerning Plaintiff's
personal and professional character and reputation has caused, continues to cause and/or

will cause many of Plaintiff's fans, friends, business associates and others to openly state that they will not support or purchase any of Plaintiff's books in the future.

54.    By reason of Defendant's actions, Plaintiff has suffered and will continue to suffer extreme hardship and actual and impending irreparable injury to his reputation and character in the eyes of his fans, retailers, Urban's Distributor and the public at large for which there is no adequate remedy at law.

55.    Defendant's false and defamatory statements of and concerning Plaintiff's personal and professional character and reputation, as detailed in paragraphs 23-26, 33-34, 37, 43 and 46-47 herein, are offensive, threatening and morally reprehensible; are outrageous in character and extreme in degree; and goes beyond all possible bounds of decency and are utterly intolerable in a civilized society.

56.    Defendant's continued pattern of harassment and threats, as detailed in paragraphs 23-26, 33-34, 37, 43 and 46-48 herein, has caused, and continues to cause, Plaintiff to suffer severe, actual and impending irreparable injury to Plaintiff's mental and emotional stability for which there is no adequate remedy at law.

57.    Defendant's continued threats to cause immediate and severe physical injury to Plaintiff, as detailed in paragraphs 29-32, 40-41 and 48 herein, has caused, and continues to cause, Plaintiff to suffer severe and irreparable mental distress, emotional anguish, fear for his safety and anxiety for which there is no adequate remedy at law.

58.    Injunctive relief is the only remedy available to Plaintiff for Defendant's illegal and unlawful acts, and is the only way Plaintiff can prevent Defendant from continuing to: (i) destroy Plaintiff's personal and professional character and reputation;

(ii) threaten Plaintiff's physical safety; and (iii) to inflict severe and irreparable emotional distress, mental anguish and anxiety on Plaintiff.

## CAUSES OF ACTION

### COUNT I
### DEFAMATION-SLANDER

59.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 58 as if fully set forth herein.

60.    Defendant's verbal statements of and concerning Plaintiff, as detailed in paragraphs 23-26, 33-34, 37 and 43 herein, are false, untrue and defamatory and were repeatedly published and/or broadcasted in the State of New York, in this District, and throughout the United States to numerous third parties.

61.    At the time Defendant made the statements identified in this Count I and paragraphs 23-26, 33-34, 37 and 43 of this Complaint, Defendant knew his statements to be false and uttered these statements with actual knowledge of their falsity.

62.    Defendant's statements were malicious because at the time Defendant made these statements he knew and had actual knowledge that these statements were false and untrue.

63.    Defendant's defamatory statements of and concerning Plaintiff's personal and professional character and reputation, as detailed in paragraphs 23-26, 33-34, 37 and 43 of this Complaint would lead a reasonable listener or reader to believe that these statements were true.

64.    As a direct and proximate result of Defendant's defamatory statements of and concerning Plaintiff's personal and professional character and reputation, as detailed

17

in paragraphs 23-26, 33-34, 37 and 43 herein, Plaintiff has suffered, and continues to suffer, significant economic and non-economic injury,

65.    As a direct and proximate result of Defendant's defamatory statements of and concerning Plaintiff's personal and professional character and reputation, as detailed in paragraphs 23-26, 33-34, 37 and 43 herein, Plaintiff has suffered, and continues to suffer, extreme stress, emotional distress, mental anguish and anxiety.

66.    As a direct and proximate result of Defendant's defamatory statements of and concerning Plaintiff's personal and professional character and reputation, as detailed in paragraphs 23-26, 33-34, 37 and 43 herein, Plaintiff has suffered special damages in that he has suffered impairment to his ability to maintain his career as an author.

67.    Defendant's conduct, as described herein, constitutes willful misconduct and Defendant's entire want of care that raises a presumption of conscious indifference to the consequences of his acts.

68.    Plaintiff is entitled to an award of punitive damages from Defendant in order to punish and penalize Defendant from repeating the unlawful conduct described herein.

69.    As a direct and proximate result of Defendant's conduct, Plaintiff is entitled to an award of compensatory damages in an amount to be determined at trial, but in no event less than $500,000.00 (Five Hundred Thousand Dollars).

70.    As a direct and proximate result of Defendant's conduct, Plaintiff is entitled to an award of punitive damages in an amount to be determined at trial, but in no event less than $1,000,000.00 (One Million Dollars) to punish and penalize Defendant for

his wanton and malicious conduct and to deter Defendant from continuing to repeat the unlawful conduct described herein.

## COUNT II
## DEFAMATION-LIBEL

71.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 58 as if fully set forth herein.

72.    Defendant has made false and defamatory written statements, as detailed in paragraphs 46-47 herein, of and concerning Plaintiff's personal and professional character and reputation and has repeatedly published and/or broadcasted these statements in the State of New York, in this District, and throughout the United States to numerous third parties.

73.    Defendant knew that his written statements, as detailed in paragraphs 46-47 herein, about Plaintiff were false and Defendant had actual knowledge of their falsity at the time these statements were published by Defendant.

74.    Defendant repeatedly published the false and defamatory statements, as detailed in paragraphs 46-47 herein, without privilege, authorization or consent.

75.    Defendant's false and defamatory statements, as detailed in paragraphs 46-47 herein, of and concerning Plaintiff have caused, and continues to cause, injury to Plaintiff's personal and professional character and reputation.

76.    Defendant made the false and defamatory statements, detailed in paragraphs 46-47 herein, for the sole purpose ruining Plaintiff's personal and professional reputation and character, to cause injury to Plaintiff in his profession as a writer and author and in his business as a book publisher/distributor.

19

77.    Defendant acted with actual malice in making the false and defamatory statements detailed in paragraphs 46-47 herein because, at all relevant times herein, Defendant knew that these statements were false and completely untrue.

78.    Defendant's false and defamatory statements, as detailed in paragraphs 46-47 herein, have caused significant and irreparable harm to Plaintiff's reputation and character, especially among Plaintiff's fans.

79.    As a direct and proximate result of Defendant's statements, as detailed in paragraphs 46-47 herein, Plaintiff's personal and professional reputation has suffered significant damage.

80.    As a direct and proximate result of Defendant's statements, as detailed in paragraphs 46-47 herein, Plaintiff has suffered, and continues to suffer, considerable stress, emotional distress, mental anguish and intense anxiety.

81.    As a direct and proximate result of Defendant's statements, as detailed in paragraphs 46-47 herein, Plaintiff has suffered special damages in that he has suffered impairment to his ability to maintain his career as an author or, at the very least, has lost many fans of his books.

82.    The conduct of Defendant demonstrates willful misconduct and a want of care that raises a presumption of conscious indifference to the consequences of Defendant's actions.

83.    Plaintiff is entitled to an award of punitive damages from Defendant in order to punish and penalize Defendant for his wanton and malicious conduct and to deter Defendant from continuing to repeat his unlawful conduct.

84.    As a direct and proximate result of Defendant's conduct, Plaintiff is entitled to an award of compensatory damages in an amount to be determined at trial, but in no event less than $500,000.00 (Five Hundred Thousand Dollars).

85.    As a direct and proximate result of Defendant's conduct, Plaintiff is entitled to an award of punitive damages in an amount to be determined at trial, but in no event less than $1,000,000.00 (One Million Dollars) to punish and penalize Defendant and to deter Defendant from repeating his unlawful conduct.

## COUNT III
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

86.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 85 as if fully set forth herein.

87.    Since October 2007, Defendant has engaged in a vindictive campaign to not only ruin Plaintiff's personal and professional reputation and character, but to harass Plaintiff and threaten his life in order to cause Plaintiff severe emotional distress and mental anguish.

88.    Since October 2007, Defendant, as detailed in paragraphs 23-47 herein, has made the most vile, offensive, defamatory, lewd and morally reprehensible statements about Plaintiff that are so outrageous in character and extreme in degree as to go beyond all possible bounds of decency and are utterly intolerable in a civilized society.

89.    In addition, Defendant, as detailed in paragraphs 29-31, 40-42 and 48 herein, has repeatedly communicated, to Plaintiff and others, his intention to cause Plaintiff severe bodily injury and has even threatened to kill Plaintiff.

21

90.    Defendant's conduct and statements, as detailed in paragraphs 23-48 herein, so transcend the boundaries of decency as to be regarded as atrocious and intolerable in a civilized society.

91.    By his conduct and statements, Defendant is intentionally, and with malice, inflicting emotional as well as mental distress on Plaintiff.

92.    As a direct and proximate result of Defendant's extreme and outrageous statements and conduct, Plaintiff has suffered and continues to suffer severe emotional distress, mental anguish, anxiety, daily stress, sleep disruptions, constant fear and worry.

93.    As a direct and proximate result of Defendant's extreme and outrageous statements and conduct Plaintiff is experiencing intense physical and emotional pain and the perilous effects of worry that is damaging to normal activities, concentration, self-care, carrying out of business, and general enjoyment of life and life functions.

94.    As a direct and proximate result of Defendant's conduct, Plaintiff is entitled to an award of compensatory damages in an amount to be determined at trial, but in no event less than $200,000.00 (Two Hundred Thousand Dollars).

## COUNT IV
## PRELIMINARY INJUNCTIVE RELIEF

95.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 94 as if fully set forth herein.

96.    Defendant's false and defamatory statements of and concerning Plaintiff, as detailed in paragraphs 23-26, 33-34, 37-43 and 46-47 herein, has been, and continue to be, repeatedly published and communicated in the State of New York, in this District and throughout the United States to many of Plaintiff's fans, associates, authors and business partners.

22

97.    Defendant's false and defamatory statements, as detailed in paragraphs 23-26, 33-34, 37-43 and 46-47 herein, attack Plaintiff's personal and professional reputation and character and have had, and continues to have, serious and detrimental consequences to his profession as a writer and as a publisher/distributor of Urban's books/novels.

98.    Plaintiff has been, and continues to be, bombarded with numerous e-mails and interviews from and by Defendant, as detailed in paragraphs 23-26, 33-34, 37-43 and 46-48 herein, all of which contain vile, crude, hurtful, offensive, morally reprehensible and defamatory statements and threats to Plaintiff's physical safety.

99.    If Defendant is not immediately enjoined from continuing to publish his false and defamatory statements of and concerning Plaintiff, Plaintiff will suffer severe and irreparable injury to his reputation, credibility and character as a writer and as a publisher/distributor of Urban's books/novels, for which there is no alternative or adequate remedy at law.

100.    If Defendant is not immediately enjoined from continuing to harass and threaten Plaintiff with physical bodily harm, Plaintiff will have to live in constant fear of Defendant and will have to continue to suffer severe and irreparable mental anguish, emotional distress, anxiety and worry until a final resolution of this case.

101.    It is more than likely that Plaintiff will succeed on the merits of his claim for defamation and intentional infliction of emotional harm against Defendant because the statements supporting these claims cannot be disputed by Defendant and cannot be considered protectible speech.

102.    Therefore, this Court should immediately enter a preliminary injunction enjoining Defendant from: (i) continuing to threaten Plaintiff's physical safety; and (ii)

publishing and/or broadcasting any further false and defamatory statements of and concerning Plaintiff's reputation, credibility and character as a writer and/or as a publisher/distributor of Urban's books/novels.

## COUNT V
## PERMANENT INJUNCTIVE RELIEF

103.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 102 as if fully set forth herein.

104.    As demonstrated herein, Defendant's false and defamatory statements of and concerning Plaintiff, as detailed in paragraphs 23-26, 33-34, 37-43 and 46-47 herein, has been, and continue to be, published and communicated in the State of New York, in this District and throughout the United States to many of Plaintiff's fans, associates, authors, business partners and numerous other third-parties.

105.    Defendant's false and defamatory statements, as detailed in paragraphs 23-26, 33-34, 37-43 and 46-47 herein, attack Plaintiff's personal and professional reputation and character and have had, and continues to have, serious and detrimental consequences to his profession as a writer and as a publisher/distributor of Urban's books/novels.

106.    Plaintiff has been, and continues to be, bombarded with numerous e-mails and interviews from and by Defendant, as detailed in paragraphs 23-26, 33-34, 37-43 and 46-48 herein, all of which contain vile, crude, hurtful, offensive, morally reprehensible and defamatory statements and threats to Plaintiff's physical safety.

107.    If Defendant is not permanently enjoined from continuing to publish his false and defamatory statements of and concerning Plaintiff, Plaintiff will suffer severe and irreparable injury to his reputation, credibility and character as a writer and as a

publisher/distributor of Urban's books/novels, for which there is no alternative or adequate remedy at law.

108.    If Defendant is not permanently enjoined from continuing to harass and threaten Plaintiff with physical bodily harm, Plaintiff will have to live in constant fear of Defendant and will have to continue to suffer severe and irreparable mental anguish, emotional distress, anxiety and worry, for which there is no alternative or adequate remedy at law.

109.    Therefore, this Court should enter a permanent injunction enjoining Defendant from: (i) threatening Plaintiff's physical safety; and (ii) publishing and/or broadcasting any false and/or defamatory statements of and concerning Plaintiff's reputation, credibility and character as a writer and/or as a publisher/distributor of Urban's books/novels.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that this Court:

A.    Issue a preliminary injunction ordering Defendant, his agents, employees, or other individuals or entity(ies) working in conjunction with him or on his behalf, to refrain immediately and pending the final hearing and determination of this action from: (i) threatening Plaintiff's physical safety and/or threatening to cause Plaintiff physical harm; and (ii) publishing and/or broadcasting any false and/or defamatory statements of and concerning Plaintiff's reputation, credibility and character as a writer and/or as a publisher/distributor of Urban's books/novels;

B.    Issue a permanent injunction perpetually enjoining and restraining Defendant, his agents, employees, or other individuals or entity(ies) working in

conjunction with him or on his behalf, from: (i) threatening Plaintiff's physical safety and/or threatening to cause Plaintiff physical harm; and (ii) publishing and/or broadcasting any false and/or defamatory statements of and concerning Plaintiff's reputation, credibility and character as a writer and/or as a publisher/distributor of Urban's books/novel;

C.    Enter judgment against Defendant in an amount to be determined at trial, but in no event less than $500,000.00 (Five Hundred Thousand Dollars), representing compensatory damages for Plaintiff's defamation claims;

D.    Enter judgment against Defendant in an amount to be determined at trial, but in no event less than $1,000,000.00 (One Million Dollars), representing an award of punitive damages for Plaintiff's defamation claims based on Defendant's willful, intentional and malicious publication and uttering of false and defamatory statements of and concerning Plaintiff that Defendant knew to be false and completely untrue;

E.    Enter judgment against Defendant in an amount to be determined at trial, but in no event less than $300,000.00 (Three Hundred Thousand Dollars), representing an award of compensatory damages for Plaintiff's claim of intentional infliction of emotional distress;

F.    Award of Plaintiff his reasonable attorneys' fees, costs and expenses relating to this action; and

G.    Award any such other and further relief as the Court may deem just and proper.

Dated: New York, New York
       January 30, 2008

Respectfully submitted,

Paul A. Chin, Esq. (PC 9656)

26

LAW OFFICES OF PAUL A. CHIN
The Woolworth Building
233 Broadway, 5th Floor
New York, NY 10279
(212) 964-8030
*Attorneys for Plaintiff*

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial pursuant to Rule 38(b) of the Federal Rules of Civil

Procedure.

Dated: New York, New York
       January 30, 2008

Respectfully submitted,

Paul A. Chin, Esq. (PC 9656)
LAW OFFICES OF PAUL A. CHIN
The Woolworth Building
233 Broadway, 5th Floor
New York, NY 10279
(212) 964-8030
*Attorneys for Plaintiff*

27

# EXHIBIT C

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CARL WEBER | CASE NO.: 08 Civ 0983 (JGK) |
| Plaintiff | |
| | (ECF Case) |
| vs. | |
| JIHAD UHURU | |
| Defendant | |

## [PROPOSED] ORDER FOR ENTRY OF JUDGMENT BY DEFAULT AND PERMANENT INJUNCTION AGAINST JIHAD UHURU

On January 30, 2008, Carl Weber ("Plaintiff") filed a Complaint with this Court asserting claims against defendant Jihad Uhuru ("Defendant") for defamation (i.e. slander and libel) and seeking preliminary and permanent injunctive relief against Defendant (the "Complaint"). Proper service of process has been affected, Defendant has failed to answer or otherwise defend in this action and the Clerk has issued a Certificate of Default against Defendant. Plaintiff has now submitted his application for entry of default judgment and permanent injunctive relief against Defendant (hereinafter the "Application") pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure ("Fed.R.Civ.P.") and Rule 55.2(b) of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York (the "Local Civil Rules").

The Court has carefully considered: the Complaint, the allegations of which are well-pleaded and hereby taken as true; the Application, and the documents and papers attached thereto and/or submitted in support thereof; and being fully advised the Court hereby:

GRANTS Plaintiff's Application for Entry of Default Judgment against Defendant and enters findings of fact and conclusions of law finding Defendant liable for all of the claims and/or causes of action asserted against Defendant, as alleged in the Complaint. The Court further grants Plaintiff's request for a hearing/inquest to determine the amount of Plaintiff's damages to be assessed against Defendant in this action. Accordingly, the Court now issues the following Order for Default Judgment and Permanent Injunctive Relief against Defendant ("Order").

## I. FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A. Jurisdiction and Venue

This Court has original subject matter jurisdiction with respect to this action pursuant to 28 U.S.C. §1332 (a)(1) as there exists complete diversity of citizenship between Plaintiff, who is a citizen of the State of New York, and Defendant, who is a citizen of the State of Georgia; and the amount in controversy exceeds Seventy Five Thousand Dollars ($75,000.00), exclusive of interest and costs. This Court has personal jurisdiction over Defendant because Defendant has willfully, intentionally and purposefully committed wrongful acts in the State of New York and has caused harm to Plaintiff in the State of New York, where Plaintiff resides.

Venue properly lies with this Court pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events giving rise to Plaintiff's claims against Defendant in this action occurred in this District, among other places.

B.    **Findings of fact**

Plaintiff is a well known author and has written several best selling novels. Plaintiff is signed to an exclusive writer's contract with a major New York publishing company and, as a part of this contract, Plaintiff must conduct book tours in which he travels across the country to meet with his fans, appear on various radio stations and conducts interviews with various newspapers and magazines.    Plaintiff is also the majority owner, and managing member, of the book publishing/distribution company known as Urban Books, LLC. (hereinafter "Urban").    Urban is a New York limited liability company which has entered into several exclusive writer contracts with numerous well known authors (hereinafter "Urban's Authors") and is the exclusive publisher/distributor of books written by Urban's Authors.    Urban currently has an exclusive publishing/distribution agreement with a major New York publishing/distribution company (hereinafter "Distributor"), through which Urban publishes and distributes books written by Urban's Authors throughout the United States.

Defendant is a citizen of the State of Georgia and was properly served with a copy of the summons and the Complaint in this action on March 25, 2008 and March 28, 2008. On May 14, 2008, this Court, pursuant to Defendant's written request, extended the time in which Defendant had to respond to the Complaint to June 13, 2008.    Defendant has failed to answer or otherwise respond to the Complaint and has not appeared or defended this action.    On June 20, 2008, the Clerk of this Court entered Defendant's default in this action.

Defendant, since October 30, 2007, has willfully and intentionally made knowingly false and defamatory statements of and concerning Plaintiff's reputation and

character and has willfully and intentionally made knowingly false and defamatory statements of and concerning Plaintiff's personal and professional reputation and character. In addition, Defendant has willfully and intentionally made knowingly false and defamatory statements of and concerning Plaintiff's book publishing/distribution company (i.e. Urban). Defendant has repeatedly published and/or broadcasted, verbally and in writing, his knowingly false and defamatory statements regarding Plaintiff and Plaintiff's book publishing/distribution company, via the internet, to vast numbers of third parties in the State of New York and throughout the United States; which has caused injury to: Plaintiff's personal and professional reputation and character; and Plaintiff's book publishing/distribution company.

Defendant, since October 30, 2007, has repeatedly threatened Plaintiff with severe bodily harm causing Plaintiff to reasonably believe that such severe bodily harm was imminent. Defendant's numerous statements to Plaintiff threatening him with severe bodily harm have caused Plaintiff to reasonably fear for his safety and have caused Plaintiff severe emotional distress, mental anguish, fear and worry.

Defendant's false and defamatory statements of and concerning Plaintiff's personal and professional character and reputation has caused, continues to cause and/or will cause many of Plaintiff's fans, friends, business associates and others to openly state that they will not support or purchase any of Plaintiff's books in the future.

By reason of Defendant's actions, Plaintiff has suffered and will continue to suffer extreme hardship and actual and impending irreparable injury to his reputation and character in the eyes of his fans, retailers, Urban's Distributor and the public at large for which there is no adequate or appropriate remedy at law. Defendant's false and

defamatory statements of and concerning Plaintiff's personal and professional character and reputation are offensive, threatening and morally reprehensible; are outrageous in character and extreme in degree; and goes beyond all possible bounds of decency and are utterly intolerable in a civilized society. Defendant's continued pattern of harassment and threats has caused, and continues to cause, Plaintiff to suffer severe, actual and impending irreparable injury to Plaintiff's mental and emotional stability for which there is no adequate or appropriate remedy at law.

**C.    Conclusions of Law**

    **1.    Defendant is liable on Counts I and II of the Complaint**

Counts I and II of the Complaint assert causes of action against Defendant for defamation (i.e. Count I- Slander; Count II-Libel). In New York, to prevail on claim for defamation (for slander or libel), a plaintiff must establish the following elements: (i) a false and defamatory statement of fact; (ii) regarding the plaintiff; (iii) published to a third party by the defendant; and (iv) resulting in injury to the plaintiff. New York law also recognizes the doctrine of *per se* defamation which is limited to four categories of statements that: (a) charge plaintiff with a serious crime; (b) tend to injure plaintiff in its business, trade or profession; (c) plaintiff has some loathsome disease; or (d) impute unchastity. Where statements are *pre se* defamatory, the law presumes that damages will result and they need not be separately proved.

In support of Counts I and II, the Complaint alleges that Defendant, on numerous occasions, made knowingly false, verbal and written, statements of fact of and concerning Plaintiff's personal and professional character and reputation and that Defendant repeatedly published and/or broadcasted these knowingly false statements of

fact regarding Plaintiff, via several websites located on the internet, to numerous third parties located in the State of New York and throughout the United States. The Complaint also alleges that Defendant's defamatory statements of and concerning Plaintiff's personal and professional character and reputation would lead a reasonable listener or reader to believe that these statements were true. The Complaint further alleges that Defendant's continuous and repeated publication and/or broadcasting of his defamatory statements of and concerning Plaintiff's personal and professional character and reputation has caused Plaintiff to suffer serve mental anguish, stress and anxiety; has injured Plaintiff in his profession as a writer and author; and has caused injury to Plaintiff's book publishing/distribution company; thereby causing Plaintiff significant economic and non-economic damages.

The well-pleaded allegations of the Complaint sufficiently establish the causes of action asserted against Defendant in Counts I and II of the Complaint. Therefore, Defendant is liable to Plaintiff on Counts I and II of the Complaint.

      2.    **Defendant is liable on Count III of the Complaint**

Count III of the Complaint asserts a cause of action against Defendant for intentional infliction of emotional distress. In order to recover for intentional infliction of emotional distress, a plaintiff must show that the defendant engaged in extreme or outrageous conduct which intentionally or recklessly caused severe emotional distress to the plaintiff. The conduct alleged must be so outrageous and atrocious that it is utterly intolerable in a civilized community.

In support of Count II, the Complaint alleges that Defendant, since October 2007, has engaged in a vindictive campaign to not only ruin Plaintiff's personal and

professional reputation and character, but to harass Plaintiff and threaten his life in order to cause Plaintiff severe emotional distress and mental anguish. The Complaint also alleges that Defendant has made the most vile, offensive, defamatory, lewd and morally reprehensible statements about Plaintiff that are so outrageous in character and extreme in degree as to go beyond all possible bounds of decency and are utterly intolerable in a civilized society. Moreover, the Complaint alleges that Defendant has repeatedly communicated to Plaintiff, and others, his intention to cause Plaintiff severe bodily injury and has even threatened to kill Plaintiff. Examples of Defendant's statements are set forth in the Complaint.

Finally, the Complaint alleges that Defendant, by his conduct and statements, has intentionally, and with malice, inflicted emotional as well as mental distress on Plaintiff, and that Plaintiff, as a direct and proximate result of Defendant's statements and conduct, has suffered and continues to suffer severe emotional distress, mental anguish, anxiety, daily stress, sleep disruptions, constant fear and worry and general enjoyment of life and life functions.

The well-pleaded allegations of the Complaint sufficiently establish the cause of action asserted against Defendant in Count III of the Complaint. Therefore, Defendant is liable to Plaintiff on Count III of the Complaint.

3.    **Plaintiff is entitled to the injunctive relief requested in Count V of the Complaint**

Count V of the Complaint seeks injunctive relief permanently enjoining Defendant from: (i) threatening Plaintiff's physical safety; and (ii) publishing and/or broadcasting any false and/or defamatory statements of and concerning Plaintiff's reputation, credibility and character as a writer and/or as a publisher/distributor of

### III.    ORDER FOR PERMANENT INJUNCTION

**IT IS FURTHER ORDERED** that:

A.    the well-pleaded allegations of the Complaint sufficiently establish Plaintiff's entitlement to the permanent injunctive relief requested in Count V of the Complaint; and

B.    Defendant Jihad Uhuru, his agents, employees, or other individuals or entity(ies) working in conjunction with him or on his behalf, is permanently restrained, enjoined and prohibited from: (i) threatening Plaintiff's physical safety and/or threatening to cause Plaintiff physical harm; (ii) publishing and/or broadcasting any false and/or defamatory statements of and concerning Plaintiff's reputation, credibility and character as a writer and/or author; and (iii) publishing and/or broadcasting any false and/or defamatory statements of and concerning Plaintiff's reputation and credibility as a publisher/distributor of Urban's books/novel.

### IV.    RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that this Court shall continue to retain jurisdiction over this action to assure compliance with this Order and for all other purposes related to this action.

**SO ORDERED:**

_____
Date

_____
Honorable John G. Koeltl
United States District Court Judge

PLAINTIFF'S MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

# "EXHIBIT 3"

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| CARL WEBER | : | CASE NO.:  08 Civ 0983 (JGK) |
| | : | |
| Plaintiff | : | |
| | : | (ECF Case) |
| vs. | : | |
| | : | |
| JIHAD UHURU | : | |
| | : | |
| Defendant | : | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S APPLICATION FOR ENTRY OF DEFAULT JUDGMENT

Dated: New York, New York
     July 2, 2008

Respectfully submitted,

Paul A. Chin, Esq. (PC 9656)
LAW OFFICES OF PAUL A. CHIN
The Woolworth Building
233 Broadway, 5th Floor
New York, NY 10279
(212) 964-8030
*Attorneys for Plaintiff*

# TABLE OF CONTENTS

INTRODUCTION…………………………………………………….    4
PRELIMINARY STATEMENT………………………………………...    4
STATEMENT OF FACTS & PROCEDURAL HISTORY………………    5

    A.    Plaintiff's Complaint……………………………………..    5

    B.    Defendant is properly served with a copy of the summons
        and Complaint……………..…………………………….    6

    C.    Defendant receives an extension of time to respond to
        Plaintiff's Complaint……………………………………..    6

    D.    Defendant fails to answer or otherwise respond to
        Plaintiff's Complaint……………………………………..    7

    E.    The Clerk of Court enters Defendant's default…………….    7

LEGAL ARGUMENT…………………………………………………...    8

POINT I    PROCEDURAL AND LEGAL REQUIREMENTS FOR
          OBTAINING ENTRY OF A DEFAULT JUDGMENT……    8

    A.    Procedural prerequisites for obtaining default judgment……    8

    B.    Legal requirements for obtaining default judgment…………    9

POINT II    THIS COURT SHOULD ENTER DEFAULT JUDGMENT
          AGAINST DEFENDANT…………………………………    10

    A.    The procedural prerequisites have been satisfied…………..    10

    B.    The relevant facts and applicable law support entry of a
        default judgment against Defendant………………………..    10

POINT III    A HEARING/INQUEST SHOULD BE CONDUCTED
          TO DETERMINE THE AMOUNT OF PLAINTIFF'S
          DAMAGES……………………………………………    14

CONCLUSION…………………………………………………..    14

# TABLE OF AUTHORITIES

## CASES

Au Bon Pain Corp. v. Artect, Inc.,
653 F.2d 61 (2d Cir. 1981)................................................... 12

Badian v. Brandaid Communications Corp.,
No. 03 Civ. 2424 (DC), 2004 WL 1933573 (S.D.N.Y. Aug. 30, 2004)...... 9

Credit Lyonnais Securities (USA), Inc. v. Alcantara,
183 F.3d 151 (2d Cir. 1999)................................................. 14

Enron Oil Corp. v. Diakuhara,
10 F.3d 90 (2d Cir. 1993)................................................... 8

Federal Trade Commission v. 1263523 Ontario, Inc.,
205 F.Supp.2d 218 (S.D.N.Y. 2002).......................................... 9-12

Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.,
973 F.2d 155 (2d Cir. 1992)................................................. 9, 12

Maguire v. America Piles, Inc.,
No. 01 Civ. 9483 (DLC), 2002 WL 31626972 (S.D.N.Y. Nov. 21, 2002)... 11

Mason Tenders District Council v. Duce Construction Corp.,
No. 02 Civ. 9044 (LTS), 2003 WL 1960584 (S.D.N.Y. Apr. 25, 2003)...... 12, 13

Montcalm Publishing Corp. v. Ryan,
807 F.Supp. 975 (S.D.N.Y. 1992)............................................ 12

Robertson v. John Doe,
05 Civ. 7046 (LAP), 2008 WL 2519894 (S.D.N.Y. June 19, 2008).......... 10, 13

Shah v. N.Y. State Department of Civil Service,
168 F.3d 610 (2d Cir. 1999)................................................. 9

## RULES

Fed.R.Civ.P. 12(a)(1)(A)
Fed.R.Civ.P. 55(a)
Fed.R.Civ.P. 55(b)(2)
Fed.R.Civ.P. 55(b)(2)(B)
Local Civil Rules of the U.S. District Courts for the Southern and Eastern Districts of
New York 55.2(b)

## INTRODUCTION

Plaintiff Carl Weber (hereinafter "Plaintiff"), by and through his undersigned attorneys, hereby submits this memorandum of law in support of his application for entry of default judgment against Defendant Jihad Uhuru (hereinafter "Defendant") and the relief requested in the proposed order for default judgment attached thereto (sometimes referred to herein as "Plaintiff's Application").

## PRELIMINARY STATEMENT

On March 25, 2008 and March 28, 2008, Defendant was served with a copy of Plaintiff's summons and Complaint in this action. Although Defendant had ample time to file and serve an answer or other response to Plaintiff's Complaint by April 14, 2008, in accordance with Rule 12(a)(1)(A) of the Federal Rules of Civil Procedure ("Fed.R.Civ.P."), Defendant failed to do so. Instead, on or about May 5, 2008, Defendant wrote to this Court requesting an extension of time to file his answer to Plaintiff's summons and Complaint. On May 14, 2008, this Court granted Defendant's request and ordered Defendant to file a response to Plaintiff's summons and Complaint by June 13, 2008. Defendant violated this Court's order by failing to file an answer, or otherwise respond, to Plaintiff's summons and Complaint by June 13, 2008. As of the date of this memorandum of law, Defendant has not answered, or otherwise responded, to Plaintiff's Complaint and has not appeared in this action.

On June 20, 2008, Plaintiff, pursuant to Fed.R.Civ.P. 55(a), filed a request for entry of default against Defendant with the Clerk of this Court. On June 20, 2008, the Clerk of this Court entered Defendant's default in this action. Plaintiff, pursuant to Fed.R.Civ.P. 55(b)(2), has applied to this Court for an order entering default judgment

against Defendant on the grounds that: (1) Defendant's default was willful; (2) Defendant does not have a meritorious defense to Plaintiff's Complaint; and (3) the denial of a default judgment would be unfairly prejudicial to Plaintiff.

For the reasons stated herein, this Court should grant Plaintiff's application for entry of default judgment against Defendant and enter the proposed "order for default judgment" attached thereto.

## STATEMENT OF FACTS & PROCEDURAL HISTORY

### A.    Plaintiff's Complaint

On January 30, 2008, Plaintiff commenced this action by filing his Complaint with this Court. *See, Plaintiff's Request to Enter Default at "Exhibit 4" attached thereto.* Plaintiff's Complaint alleges, *inter alia,* that Defendant, since October 2007, knowingly, willfully, intentionally and repeatedly: (i) published and/or broadcasted, in the State of New York and throughout the United States, false and defamatory statements of and concerning Plaintiff's personal and professional reputation and character to vast numbers of third parties; and (ii) threatened Plaintiff with immediate bodily harm, all of which has caused Plaintiff to suffer severe emotional distress and has detrimentally affected Plaintiff's various business relationships. *See, Plaintiff's Application at "Exhibit B, ¶¶1-4 and ¶¶22-52" attached thereto.* Based on these, and other, factual allegations, Plaintiff's Complaint asserts causes of action against Defendant for defamation and intentional infliction of emotional distress and seeks, *inter alia,* preliminary and permanent injunctive relief against Defendant. Id. at ¶¶59-109.

**B.    Defendant was properly served with a copy of the summons and Complaint**

Following commencement of this action, Plaintiff arranged to have Defendant personally served with a copy of the summons and Complaint at Defendant's dwelling place/usual place of abode, located at 2400 Aveberry Court, SE, Conyers, Georgia 30013 (hereinafter the "Georgia Address").    Plaintiff reasonably believed that the Georgia Address was Plaintiff's actual dwelling place/usual place of abode because Defendant previously acknowledged receipt of a "cease and desist" letter that Plaintiff's attorney, on or about November 27, 2007, mailed to Defendant at the Georgia Address. *Exhibits A and B.* Despite due diligence, Plaintiff's process server was unable to personally serve Defendant with a copy of the summons and Complaint at the Georgia Address. *Exhibit C.* Plaintiff's process server was also unsuccessful in his attempt to personally serve Defendant with a copy of the summons and Complaint at an alternate address in Georgia. *Exhibit D.*

Unable to personally serve Defendant with a copy of the summons and Complaint, Plaintiff ultimately effected service on Defendant: (i) on March 25, 2008, by affixing a copy of the summons and Complaint to the door of the home located at the Georgia Address; and (ii) on March 28, 2008, by mailing a copy of the summons and Complaint to Defendant at the Georgia Address. *Exhibits C and E.*

**C.    Defendant receives an extension of time to respond to Plaintiff's Complaint**

Although Fed.R.Civ.P. 12(a)(1)(A) required Defendant to file an answer or other response to Plaintiff's summons and Complaint by April 14, 2008, Defendant failed to do so. *See, Plaintiff's Request to Enter Default at "Exhibit 4" attached thereto.* Instead, on May 5, 2008, Defendant wrote a letter to this Court in which Defendant acknowledged

receipt of the summons and Complaint and requested an extension of time in which file his answer thereto. *Exhibit F.* On May 14, 2008, this Court granted Defendant's request and ordered Defendant to file a response to Plaintiff's summons and Complaint on June 13, 2008 (hereinafter the "Court's Order"). Id.

**D.     Defendant fails to answer or otherwise respond to Plaintiff's Complaint**

Although the Court's Order required Defendant to file his response to Plaintiff's summons and Complaint by June 13, 2008, Defendant failed to do so. *See, Plaintiff's Request to Enter Default at "Exhibit 4" attached thereto.* As of the date of this memorandum of law, Defendant has not answered or otherwise responded to Plaintiff's Complaint and has not appeared in, or defended against, this action. Id.

**E.     The Clerk of Court enters Defendant's default**

As a result of Defendant's failure to file a response to Plaintiff's Complaint by June 13, 2008, as required by this Court's Order, Plaintiff, pursuant to Fed.R.Civ.P. 55(a), filed a request for entry of default against Defendant with the Clerk of this Court[1]. *See, Plaintiff's Request to Enter Default.* On June 20, 2008, the Clerk of this Court entered Defendant's default in this action. *See, Plaintiff's Application at "Exhibit A" attached thereto.*

---

[1]  Plaintiff served Defendant with a copy of his Request to Enter Default, and the documents and exhibits attached thereto, via certified mail, return receipt requested.  *See, Plaintiff's Request to Enter Default at pg. 3.*

# LEGAL ARGUMENT

## POINT I
## PROCEDURAL AND LEGAL REQUIREMENTS FOR OBTAINING ENTRY OF DEFAULT JUDGMENT

### A.    Procedural prerequisites for obtaining a default judgment

When a defendant has failed to plead or otherwise defend in an action and that fact is made to appear by affidavit or otherwise, the Clerk of the Court must enter a default against such defendant. *Fed.R.Civ.P. 55(a)*. In the event of such default by defendant, a plaintiff must apply to the Court for entry of a default judgment against defendant where the plaintiff's complaint does not seek a sum certain but instead seeks, *inter alia*, injunctive relief. *Fed.R.Civ.P. 55(b)(2)*. Pursuant to Rule 55.2(b) of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York (the "Local Civil Rules"), a party seeking judgment by default shall apply to the district court "and shall append to the application (1) the clerk's certificate of default, (2) a copy of the claim to which no response has been made, (3) a proposed form of default judgment." *Local Civil Rule 55.2(b)*. Fed.R.Civ.P. 55(b)(2) states, in pertinent part, that "[I]f the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 3 days before the hearing." *Fed.R.Civ.P. 55(b)(2)*. Upon the presentation of an application for the entry of judgment, this Court may enter default judgment against Defendant pursuant to Fed.R.Civ.P. 55(b). *See,* Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95 (2d Cir. 1993).

**B.    Legal requirements for obtaining default judgment**

The disposition of an application for a default judgment is left to the sound discretion of the district court. Shah v. N.Y. State Department of Civil Service, 168 F.3d 610, 615 (2d Cir. 1999). "Rule 55(b)(2) does not set forth standards to be applied in determining when a party is entitled to a judgment by default." Badian v. Brandaid Communications Corp., No. 03 Civ. 2424 (DC), 2004 WL 1933573, at *2 (S.D.N.Y. Aug. 30, 2004). In deciding whether to grant a judgment of default, courts in this district consider: (1) whether the defendant's default was willful; (2) whether defendant has a meritorious defense to plaintiff's claims; and (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the application for default judgment. Federal Trade Commission v. 1263523 Ontario, Inc., 205 F.Supp.2d 218, 221 (S.D.N.Y. 2002). A default will be deemed "willful" where the defendant fails to answer or respond to the summons and complaint, or otherwise fails to appear in the action. Id. "A party's default is deemed to constitute a concession of all well-pleaded allegations of liability." Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992). Therefore, a defendant will not have a meritorious defense if he/she fails to proffer any defense to the factual allegations contained in the complaint. Federal Trade Commission v. 1263523 Ontario, Inc., 205 F.Supp.2d at 221. In such instances, the denial of an application for a default judgment would be unfairly prejudicial to the plaintiff. Id.

## POINT II
## THIS COURT SHOULD ENTER DEFAULT JUDGMENT AGAINST DEFENDANT

A.    **The procedural prerequisites have been satisfied**

In accordance with Local Civil Rule 55.2(b), Plaintiff has: (1) requested and obtained an entry of default against Defendant from the Clerk of this Court; and (2) applied to this Court for entry of a default judgment against Defendant via "order to show cause" and has appended thereto a copy of the clerk's certificate of default, Plaintiff's Complaint and a proposed form of default judgment. *See, Plaintiff's Application, et. seq.* As a result, Plaintiff has satisfied the procedural prerequisites for obtaining a default judgment.    Robertson v. John Doe, 05 Civ. 7046 (LAP), 2008 WL 2519894, at *3 (S.D.N.Y. June 19, 2008).

B.    **The relevant facts and applicable law support entry of a default judgment against Defendant**

As previously discussed, in determining whether to grant Plaintiff's application for default judgment this Court should consider the following three factors: (1) was Defendant's default willful; (2) does Defendant have a meritorious defense to Plaintiff's Complaint; and (3) would a denial of the application for default judgment be unfairly prejudicial to Plaintiff.    Federal Trade Commission v. 1263523 Ontario, Inc., 205 F.Supp.2d at 221. Each of the foregoing factors is satisfied in this action.

1.    **Defendant's default was willful**

Pursuant to Fed.R.Civ.P. 12(a)(1)(A), Defendant was required to answer, or otherwise respond, to Plaintiff's Complaint by April 14, 2008; however, Defendant failed to do so. *See, Plaintiff's Request to Enter Default at "Exhibit 4" attached thereto.* It is important to note that Defendant admitted that he received Plaintiff's summons and

Complaint on or about April 11, 2008. *Exhibit F.* Based on his own admission, Defendant had adequate time to answer or otherwise respond to Plaintiff's Complaint by April 14, 2008, as required by Fed.R.Civ.P. 12(a) (1)(A), but failed to do so. *See, Plaintiff's Request to Enter Default at "Exhibit 4" attached thereto.* Instead, on or about May 5, 2008, Defendant wrote a letter to this Court requesting an extension of time to file his answer to Plaintiff's Complaint. *Exhibit F.* On May 14, 2008, this Court granted Defendant's request and extended the time in which Defendant had to file his response to Plaintiff's summons and Complaint to June 13, 2008. Id. Despite being given an extension of time to respond to Plaintiff's Complaint, Defendant did not file, and has not filed, an answer or other response to Plaintiff's Complaint. *See, Plaintiff's Request to Enter Default at "Exhibits 4 and 5" attached thereto.*

A default will be deemed "willful" where the defendant fails to answer or respond to the summons and complaint, or otherwise fails to appear in the action. Federal Trade Commission v. 1263523 Ontario, Inc., 205 F.Supp.2d at 221. Defendant's default in this action was willful because Defendant, after requesting and receiving an extension of time to file an answer or other response to Plaintiff's summons and Complaint, intentionally failed to do so. Defendant's failure to answer or otherwise respond to Plaintiff's summons and Complaint not only violated Fed.R.Civ.P. 12(a)(1)(A) but also violated this Court's Order. As a result, Defendant's default in this action is willful.

### 2.    Defendant has no meritorious defense to Plaintiff's claims

"Upon the default of a [defendant], the Court must accept all of the factual allegations of the complaint as true, except those relating to damages." Maguire v. America Piles, Inc., No. 01 Civ. 9483 (DLC), 2002 WL 31626972, at *1 (S.D.N.Y. Nov.

21, 2002). In other words, "[a] default constitutes admission as to liability; therefore, the effect of a defendant's default is that [he] is deemed to have admitted all of the well-pleaded allegations raised in the complaint pertaining to liability." Montcalm Publishing Corp. v. Ryan, 807 F.Supp. 975, 977 (S.D.N.Y. 1992) see also Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d at 158 ("A party's default is deemed to constitute a concession of all well-pleaded allegations of liability."). Defendant's default conclusively establishes the absence of any meritorious defense to Plaintiff's claims because Defendant is deemed to have admitted the well-pleaded allegations of the Complaint. Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981); Mason Tenders District Council v. Duce Construction Corp., 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003).

The well-pleaded allegations contained in Plaintiff's Complaint sufficiently establish, and support, the causes of action asserted against Defendant in counts I, II and III of Plaintiff's Complaint; and adequately demonstrate Plaintiff's entitlement to the preliminary and/or permanent injunctive relief requested in counts IV and V of Plaintiff's Complaint.

### 3.    Denial of default judgment would be unfairly prejudicial to Plaintiff

By his own admission, Defendant has been aware of the existence of this action and the claims asserted against him by Plaintiff since April 11, 2008. *Exhibit F.* In addition, Defendant was aware of his legal obligation to file an answer or other response to Plaintiff's summons and Complaint. In fact, Defendant, on May 5, 2008, requested that this Court grant him an extension of time in which to file his answer to Plaintiff's summons and Complaint. Id. On May 14, 2008, this Court granted Defendant's request

and ordered Defendant to file his response to the summons and Complaint no later than June 13, 2008. Id. However, Defendant has failed to file an answer or other response to Plaintiff's Complaint. There can be no question that Defendant's default in this action has been intentional and willful. Federal Trade Commission v. 1263523 Ontario, Inc., 205 F.Supp.2d at 221 ("Defendants, having failed to respond in any way to the summons and complaint or the instant motion, or otherwise to make any appearance in this action and having failed to provide any explanation for their failure to defend, have defaulted willfully."); Mason Tenders District Council v. Duce Construction Corp., 2003 WL 1960584, at *2 (defendants' failure to respond to the complaint constitutes evidence of willful default).

It is clear that Defendant has no intention to defend this action and there is no reason to believe that "requiring [Plaintiff] to take further steps prior to a determination on the merits would be effective in eliciting a response from [Defendant]." Robertson v. John Doe, 2008 WL 2519894, at *4 citing Mason Tenders District Council v. Duce Construction Corp., supra. Defendant's willful default is sufficient to support a finding that a denial of default judgment would be unfairly prejudicial to Plaintiff. Federal Trade Commission v. 1263523 Ontario, Inc., 205 F.Supp.2d at 221 (finding that denial of motion for default judgment would unfairly prejudicial to plaintiff where defendants' default was willful). In addition a denial of default judgment would unnecessarily delay the resolution of Plaintiff's claims against Defendant and "such a delay would serve only to prejudice Plaintiff." Robertson v. John Doe, 05 Civ. 7046 (LAP), 2008 WL 2519894, at *4 ("Denial of Plaintiff's motion for default judgment...would further delay the resolution of Plaintiff's claims...such a delay would serve only to prejudice Plaintiff.").

More importantly, Plaintiff will be severely prejudiced if a default judgment is not granted since this judgment is the only mechanism that will provide the preliminary and permanent injunctive relief desperately needed by Plaintiff in this action.

### POINT III
### A HEARING/INQUEST SHOULD BE CONDUCTED TO DETERMINE THE AMOUNT OF PLAINTIFF'S DAMAGES

"Even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true." Credit Lyonnais Securities (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999). The district court "must instead conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." Id. Therefore, while Defendant's default conclusively establishes Defendant's liability for the causes of action asserted against him in Plaintiff's Complaint and Plaintiff's entitlement to the injunctive relief requested therein; a judicial hearing/inquest must be conducted in order to determine the amount of damages to be awarded to Plaintiff. *Fed.R.Civ.P. 55(b)(2)(B)*.

### CONCLUSION

For the reasons stated above, Plaintiff respectfully requests that this Court: (i) grant Plaintiff's application for entry of a default judgment against Defendant, pursuant to Fed.R.Civ.P. 55(b)(2), and enter the proposed order of default judgment attached thereto; (ii) order a judicial hearing/inquest in this action for purposes of determining the amount of Plaintiff's damages to be assessed against Defendant in this action; and (iii) order any such other and further relief as the Court may deem just and proper.

Dated: July 2, 2008
     New York, New York

Respectfully submitted,

Paul A. Chin, Esq. (PC9656)

LAW OFFICES OF PAUL A. CHIN
The Woolworth Building
233 Broadway, 5th Floor
New York, NY 10279
(212) 964-8030
*Attorneys for Plaintiff*

# EXHIBIT A

# LAW OFFICES OF PAUL A. CHIN

### MEMBER NEW YORK & MARYLAND BARS

November 27, 2007

**VIA EXPRESS MAIL**
Jihad Uhuru
2400 Aveberry Court, Se
Conyers, Georgia 30013

*Re: DEMAND TO CEASE & DESIST*

Dear Mr. Uhuru:

This firm has been retained by Carl Weber. This letter shall serve as Mr. Weber's **DEMAND** that you immediately **CEASE and DESIST** making knowingly false and defamatory statements regarding Mr. Weber and/or Mr. Weber's company Urban Books ("Urban") to various third-parties.

Mr. Weber has provided this firm with an audio copy of an audio interview you participated in on or about October 30, 2007 with Mr. Torrian Ferguson (the "interview"). In this interview, you make numerous, knowingly false and defamatory statements of fact regarding Mr. Weber and Urban, which has resulted in economic and non-economic injury to Mr. Weber and to Urban. In addition, your statements during the interview clearly shows that you made these statements for the sole purpose of preventing third-parties from doing business with Mr. Weber or Urban; or to interfere with Mr. Weber's or Urban's business relationships with third parties. The interview was broadcasted and published over the internet and, upon information and belief, continues to be broadcasted and published over the internet. Your false and defamatory statements regarding Mr. Weber and Urban has caused, and continues to cause, significant and irreparable economic and non-economic injury to both Mr. Weber and Urban.

Moreover, during the interview, you made numerous statements threatening to cause Mr. Weber physical injury. We intend to contact the proper legal authorities, provide them with a copy of the interview and request that a criminal investigation regarding your threats against Mr. Weber be immediately conducted. Should this investigation reveal that your threats of violence against Mr. Weber constitutes a violation of New York's Penal Law, Mr. Weber has every intention of fully participating and assisting in the prosecution of any such criminal violations.

For the following reasons, we demand that you immediately **CEASE AND DESIST** making false and defamatory statements regarding Mr. Weber and/or Urban and broadcasting and/or publishing these statements to third-parties.

−2−                                                      November 27, 2007

Please be advised that we intend to pursue any and all legal remedies available to Mr.
Weber and to Urban resulting from your intentional, willful and criminal conduct
described herein.

I may be contacted at the office number below should you desire to discuss this
correspondence.

Very truly yours,

Paul A. Chin

# The UPS Store® PARCEL SHIPPING ORDER   Rev. 9/06

PARCEL SHIPPING ORDER
No. 21927020

**CUSTOMER (please print)**

PRINT NAME: _Paul Oliver_   DATE: _11/27/07_

STREET: _233 Broadway_   APT #: _A/A Children_

CITY/STATE/ZIP: _NY NY 10279_   PHONE: _212-_   E-MAIL: _lawyer ebi Cadi.c_

| PKG. | SENT TO: | LIST ALL CONTENTS | DECLARED VALUE | C.O.D. AMT | ZONE | WT. | DIM. WT. | CK. ONE | Pkg. Charges Amt | Type |
|---|---|---|---|---|---|---|---|---|---|---|
| **A** | NAME: _The Walper_ | | ☐ RESIDENTIAL ☐ COMMERCIAL | ☐ PACKED BY CUSTOMER | | | | ☐ UPS NEXT DAY AIR EARLY A.M. | | SHP CHG |
| | STREET: _2400 Blueberry Court_   APT #: | | BREAKABLE ☐ YES ☐ NO | REPLACEABLE ☐ YES ☐ NO | | | | ☐ UPS NEXT DAY AIR | | DEC VAL |
| | CITY/STATE/ZIP: _Conyers Georgia no 13_ | $ | SEE #3 BELOW | SEE BACK | | | | ☐ UPS 2ND DAY AIR EARLY A.M. | | COD |
| | E-MAIL: | | | | | | | ☐ UPS 2ND DAY AIR | | PKG MAT |
| | EPSO#   PHONE: _NS_ | | | | | | | ☐ UPS 3RD DAY SELECT | | PKG LABOR |
| | | | | | | | | ☐ UPS GROUND | | |
| **B** | NAME: | | ☐ RESIDENTIAL ☐ COMMERCIAL | ☐ PACKED BY CUSTOMER | | | | ☐ UPS NEXT DAY AIR EARLY A.M. | | SHP CHG |
| | STREET:   APT #: | | BREAKABLE ☐ YES ☐ NO | REPLACEABLE ☐ YES ☐ NO | | | | ☐ UPS NEXT DAY AIR | | DEC VAL |
| | CITY/STATE/ZIP: | $ | SEE #3 BELOW | SEE BACK | | | | ☐ UPS 2ND DAY AIR | | COD |
| | E-MAIL: | | | | | | | ☐ UPS 2ND DAY AIR | | PKG MAT |
| | EPSO#   PHONE: | | | | | | | ☐ UPS 3RD DAY SELECT | | PKG LABOR |
| | | | | | | | | ☐ UPS GROUND | | |
| **C** | NAME: | | ☐ RESIDENTIAL ☐ COMMERCIAL | ☐ PACKED BY CUSTOMER | | | | ☐ UPS NEXT DAY AIR EARLY A.M. | | SHP CHG |
| | STREET:   APT #: | | BREAKABLE ☐ YES ☐ NO | REPLACEABLE ☐ YES ☐ NO | | | | ☐ UPS NEXT DAY AIR | | DEC VAL |
| | CITY/STATE/ZIP: | $ | ☐ YES ☐ NO SEE #3 BELOW | ☐ YES ☐ NO SEE BACK | | | | ☐ UPS 2ND DAY AIR | | COD |
| | E-MAIL: | | | | | | | ☐ UPS 3RD DAY SELECT | | PKG LABOR |
| | EPSO#   PHONE: | | | | | | | ☐ UPS GROUND | | PKG MAT |

1. Subject to these terms and conditions, this The UPS Store® center ("We" or "Us") will receive, forward and/or pack parcels for customer ("You" or "Your"). The carrier for all parcels accepted by Us shall be the UPS unless noted here. Your true name and address appear on the mailing label. You confirm the accuracy of "Ship To" address.

2. We do not accept hazardous material, Other Regulated Material-D (ORM-D), illegal items, articles of unusual value, including but not limited to cash. See carrier's list or other restricted items. Certified locations may accept some forms of ORM-D.

3. We do not transport Your parcels. We assume no liability for the loss or damage of the parcels accepted for shipment or for Your subsequent use of the parcels or their contents while in transit.

CUSTOMER COPY   www.theupsstore.com

© 2006 MAIL BOXES ETC., INC. © 2006 Ed., Rev.2006) (FORM #220105)

**CUSTOMER'S SIGNATURE**

I certify that I agree to the above ac conditions herein, and that the stated contents and the value of each package label is printed and complete.

SIGN X _Thank You_
HERE X

(Continued on back)

For lost or damaged parcels is limited by the provisions in this PSO. You agree to all terms and conditions on this PSO whether or not declared value is purchased. Driver may deliver parcel without a signature unless Your request a signature on delivery and pay any applicable charge for such service. Carrier is not liable for loss or damage occurring after delivery.

| | SUB-TOTAL | $ |
|---|---|---|
| | TAX | |
| | TOTAL CHARGES | $ |

CENTER #: _Thank You_   EMPLOYEE'S INITIALS:

# iShip    SHIPPING TOOLS

## Your Tracking Information

| | |
|---|---|
| Status: | **DELIVERED** |
| Last Scan: | **11/29/2007 9:06:00 AM DELIVERED CONYERS, GA US** |
| | **CONYERS, GA US** |
| Delivered To: | **CONYERS, GA US** |
| Delivery Date: | **Thursday, November 29, 2007** |
| Delivery Time: | **9:06:00 AM** |
| Delivery Location: | **FRONT DOOR** |
| Carrier: | **UPS** |
| Service: | **NEXT DAY AIR** |
| UPS Tracking Number: | **1Z1F361R0170260786** |

Scan History:

11/29/2007 9:06:00 AM DELIVERED CONYERS, GA US

**NOTE:** The times listed in the scan details are local time.

Done

*Status as of Tuesday, June 17, 2008 6:00:21 PM Pacific Standard Time*

Learn More

## Track Another Package

Enter tracking number: [          ]

Submit

Tracking provided for

   

FedEx    UNITED STATES POSTAL SERVICE    UPS

Having trouble? Click here for help. ● iShip, Inc. Privacy Policy
© 1998 - 2008 iShip, Inc. iShip, the iShip logo, Price It, Track It, Sell It, and Shipping Insight are trademarks of iShip, Inc. iShip, Inc. is a subsidiary of United Parcel Service of America, Inc. Logo and marks used by permission. All rights reserved.

```
          The UPS Store - #5673
             144 North 7th St.
            Brooklyn, NY 11211
              (718) 218-6440

          11/28/07  08:56 AM

      We are the one stop for all your
    shipping, postal and business needs.

      We offer all the services you need
         to keep your business going.
```



```
001 001005 (001)            TO $  26.45
    NDA
    Tracking# 1Z1F361R0103594382
002 001005 (001)            TO $  27.38
    NDA
    Tracking# 1Z1F361R0170260786
003 001005 (001)            TO $  27.73
    NDA
    Tracking# 1Z1F361R0170261178

                   SubTotal  $  81.56
                   Total     $  81.56

                   VISA      $  81.56
ACCOUNT NUMBER *   ************8027


Receipt ID 82714949926475888621 003 Items
CSH: Center          Tran: 8759 Reg: 002

    Thank you for visiting our store.
      Please come back again soon.

    Whatever your business and personal
      needs, we are here to serve you.
```

# EXHIBIT B

Subj:   **Re: Street Life mass market**
Date:   12/2/2007 5:44:06 P M  Eastern Standard Time
From    urbanbooks@optonline.net
To.     Jihadwrites@bellsouth.net
CC.     awyechin@aol.com

See you in court.

----- Original Message -----
From: Jihad
Date: Sunday, December 2, 2007 1:53 pm
Subject: Re: Street Life mass market
To: URBAN BOOKS

> Re: Street Life mass market! GOT THAT LETTER, YOU KNOW LITTLE
> MAN, YOU HAVE TO BE THE STUPIDEST, THINK-THEY SMART MOTHA-FUCKA
> IN THE WORLD. NOT ONLY DID YOU THREATEN MY LIFE AND MY CAREER IN
> THE UNDERLYING E-MAIL, BUT I HAVE INVOICES FROM URBAN BOOKS THAT
> SPAN SOME YEARS. OF HOW MUCH YOU'VE BEEN SELLING BOOKS FOR, I
> HAVE STATEMENTS. INACCURATE 1099'S, E-MAILS LINKED TO AN IP
> ADDRESS THAT YOU OWN HARRASSING OTHER AUTHORS, AND BEST OF ALL I
> HAVE MONEY TO END YOU AND YOUR ILLEGAL PRACTICES, SO TELL MR.
> CHIN THIS, RESEARCH MRS. ADDERLY WHO WAS CONVICTED OF LITERARY
> FRAUD EARLIER THIS YEAR, I GOT SO MUCH DIRT ON YOUR ASS I COULD
> WRITE A BOOK, BUT SINCE YOU ILLEGALLY HAVE TRIED TO RUIN MY
> CAREER, HENCE AMAZON: RIDING RHYTHM, AMONG OTHER THINGS WHICH I
> CAN PROVE VIA PAPER TRAILS AND STATEMENTS FROM VARIOUS AUTHORS
> AND FORMER EMPLOYEES OF URBAN, I PROMISE YOU, AND THIS IS NOT A
> THREAT, I PROMISE YOU THAT ME AND SEVERAL OTHERS WILL GO TO THE
> F.B.I. NOT AN ATTORNEY BUT THE F.B.I. WITH PROOF AND TIMELINES
> OF ALL THAT YOU'VE DONE. YOU'VE LEFT A PAPER TRAIL DUDE AND LET
> THIS BE A NOTICE YOU HAVE 1 WEEK TO GET WITH ME AND DO RIGHT BY
> ALL THE AUTHORS YOU'VE WRONGED. LA JILL HUNT, JIHAD, THOMAS
> LONG, ALISHA YVONNE, PAT TUCKER, LETONYA WILLIAMS, DEBRA
> CLAYTON, ED MCNAIR...TRUST ME LITTLE MAN YOU DON'T WON'T THIS, I
> PROMISE YOU DON'T.... NOW IF YOU WANT TO GO TO MEDIATION I'M
> AMICABLE TO THAT... BUT IT AIN'T ABOUT ME IT'S ABOUT ALL OF US.
> THE AUTHORS YOU'VE WRONGED, YOU SHOULD BE ASHAMED OF YOURSELF
> AND I AM PERSONALLY GOING TO DO WHATEVER I HAVE TO DO TO END
> YOUR LITTLE CHARADE. I WANT WHAT IS RIGHT FOR ALL THE AUTHORS I
> NAMED, AND I WON'T ACCEPT ANYTHING LESS, SO IF YOU AIN'T TALKING
> ABOUT FREEING AND COMING TO TERMS WITH ALL THE AUTHORS I NAMED
> THEN I'LL SHOW YOU HOW SERIOUS I AM. THE F.B.I. TAKE LITERARY
> FRAUD VERY SERIOUS...YOU CAN RUN BUT YOU CAN'T HIDE FROM THE
> PAPER TRAIL OF IMMORAL AND ILLEGAL ACTIVITIES THAT YOU'VE PERPETUATED
>
> JIHAD SHAEEED UHURU
> ----- Original Message -----
> From: URBAN BOOKS
> To: Jihad
> Sent: Sunday, May 20, 2007 7:48 AM
> Subject: Re: Street Life mass market
>
>
> I HEAR YOU AN ALISHA WANNA RUN YOUR MOUTH  WELL TALK ALL THE
> SHIT YOU WANT
> BUT YOU'RE DEAD IN THIS INDUSTRY!!!!!!
> ----- Original Message -----
> From: "Jihad"
> To
> Sent: Saturday, March 24, 2007 10:26 AM
> Subject: Street Life mass market
>
>
> > Carl,

> >
> > What's up bruh? I see Street Life is coming out mass market
> in July. What
> > do you think about taking all the foul language out and
> doing it as urban
> > young adult. I still get speaking engagements becaue of it
> being my story
> > and being inspirational  There is a loud cry for books for
> young black
> > men. and you know Street life is the one. What do you think?
> >
> >
> > Jihad
>
>
>
>

# EXHIBIT C

UNITED STATES DISTRICT COURT/SOUTHERN DISTRICT OF NEW YORK    Attorney: PAUL A. CHIN, ESQ.

CARL WEBER

                                                                Plaintiff(s)
                                                                                Index # 08 CV 0983 (KOELTL)
                              - against -
                                                                                Purchased January 30, 2008

JIHAD UHURU
                                                                Defendant(s)
                                                                                **AFFIDAVIT OF SERVICE**

STATE OF $\cancel{Geos}$ g.n  : COUNTY OF $Gwnm+$  ss:

$\underline{\text{Leman Martinell}}$ BEING DULY SWORN DEPOSES AND SAYS DEPONENT IS NOT A PARTY TO THIS ACTION, OVER THE AGE OF EIGHTEEN YEARS AND RESIDES AT 234 Cunkic St. Lawrenculle Ga 30045

That on March 25, 2008 at 08:15 PM at

2400 AVEBERRY COURT, SE
CONYERS, GA 30013

deponent served the within SUMMONS AND COMPLAINT AND DEMAND FOR JURY TRIAL on JIHAD UHURU therein named,

**AFFIXING
TO DOOR**
by affixing a true copy of each to the door of said premises, which is the Defendant's dwelling house/usual place of abode within the state. Deponent was unable, with due diligence to find the Defendant or a person of suitable age and discretion, thereat, having called there on:

February 2, 2008  AT  7:45 PM          February 6, 2008  AT  8:15 AM
March 25, 2008  AT  8:15 PM

ADDRESS VERIFIED BY ATTORNEY'S RECORDS ONLY.

That at the time of such service deponent knew the person so served as aforesaid to be the same person mentioned and described as the Defendant in this action.

Sworn to me on:  032608

Notary:

DOUG MARTINELLI
NOTARY PUBLIC, GWINNETT COUNTY GEORGIA
MY COMMISSION EXPIRES JULY 21, 2011.

Server:
Coleman Martinell
Invoice #: 456167

# EXHIBIT D

STATE OF New York    JURISDICTION OF: Southern District

Carl Weber

Plaintiff,                                    Case Number 08 CV 0983

Vs.

Thad Uhuru

Defendant/Respondent,

## AFFIDAVIT OF DUE DILIGENCE
### WHERE SERVICE CANNOT BE PERFECTED

Personally appeared before me, Coleman Mattinelli, the undersigned officer duly authorized

to administer oaths, first being duly sworn, on oath deposes and states that he/she is not related to any party, has no

interest in the above styled case, is not a convicted felon, is a resident of Georgia , and is a native born citizen of the

United States of America.

Affiant further states that he/she attempted to serve the Defendant/Respondent; however, the defendant

could not be served or would not provide an opportunity for service to be perfected despite the due diligence of the

process server.

Service was attempted at the following location(s) on the date(s) and time(s) given with results as listed:

At: 5331 O Mara Ln Stone Mtn Ga 30085

Date: 032508    Time: 715    am/pm Result: No one home

At: _____

Date: _____ Time:_____ am/pm Result:_____

At: _____

Date: _____ Time:_____ am/pm Result:_____

Additional Comments:

_____

_____

_____

_____

_Coleman Martinelli_
Private Process Server
Martinelli Investigations, Inc

Sworn to and Subscribed before me

On _March 25_ 2008
_____
Public Notary Signature/Seal

DOUG MARTINELLI
NOTARY PUBLIC, GWINNETT COUNTY GEORGIA
MY COMMISSION EXPIRES JULY 21, 2011.

# EXHIBIT E

UNITED STATES DISTRICT COURT/SOUTHERN DISTRICT OF NEW YORK    Attorney:  PAUL A. CHIN, ESQ.

| | | |
|---|---|---|
| CARL WEBER | | |
| | Plaintiff(s) | Index # 08 CV 0983 (KOELTL) |
| - against - | | Purchased January 30, 2008 |
| JIHAD UHURU | | Mail Date March 28, 2008 |
| | Defendant(s) | **AFFIDAVIT OF MAILING** |

STATE OF NEW YORK: COUNTY OF NEW YORK  ss:

JONATHAN GRABER BEING DULY SWORN DEPOSES AND SAYS DEPONENT IS NOT A PARTY TO THIS ACTION, OVER THE AGE OF EIGHTEEN YEARS AND RESIDES IN THE STATE OF NEW YORK.

That on March 28, 2008 at a regular depository maintained by the United States Post Office deponent mailed a copy of the SUMMONS AND COMPLAINT AND DEMAND FOR JURY TRIAL to JIHAD UHURU at

2400 AVEBERRY COURT, SE
CONYERS, GA 30013

Copy was mailed REGULAR FIRST CLASS MAIL,  and was marked personal & confidential and not indicating on the outside thereof, by return address or otherwise that said notice is from an attorney or concerns an action against the person to be served.

Sworn to me on:  March 28, 2008

| | | | |
|---|---|---|---|
| JOEL GRABER | JOSEPH KNIGHT | JONATHAN GRABER | **JONATHAN GRABER** |
| Notary Public, State of New York | Notary Public, State of New York | Notary Public, State of New York | License #: 1102041 |
| No. 02GR4699723 | No. 01KN6178241 | No. 01GR6156780 | Invoice #: 456167 |
| Qualified in New York County | Qualified In New York County | Qualified in New York County | |
| Expires February 10, 2010 | Expires November 26, 2011 | Expires December 4, 2010 | |

UNITED PROCESS SERVICE, INC., 3RD FLOOR, 315 BROADWAY, NEW YORK, NY  10007 - (212) 619-0728

# EXHIBIT F

Jihad Uhuru
2324 Fountainhead Cir.
Conyers, GA. 30013
5-5-08



Dear Honorable Judge Koeltl

I wrote to you explaining that I hadn't been properly served the summons for case number 08 CV 0983. The address it was sent to has been vacant since the first of January, 2008. The United States postal service can verify this as well as my former neighbors. As I stated, I went by the residence at 2400 Aveberry Ct. Conyers GA. 30013, which again, I hadn't lived or no one else has lived there since January 2008. At the front porch was a rain weathered summons, as stated previously. In a letter from your office, it was explained that an answer was due on April 14, 2008, I did not even see the summons until April 11, 2008. And when I did, I wasted no time in contacting your office, and was told to write a letter explaining the situation, which I did. For these reasons which are due to improper service of summons 08 CV 0983, I am requesting an extension on filing an answer to the courts for summons 08 CV 0983. Thank you for your patience.

Sincerely

Jihad Uhuru

_[signature]_

_Time to respond to the summons and Complaint extend to June 13, 2008._

_So ordered._

_[signature]_

5/14/08    U.S.D.J.

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/19/08